JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Frank Becerra, appeals his conviction for domestic violence. After a thorough review of the arguments and for the reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} On July 20, 2005, appellant was indicted on one count of domestic violence, in violation of R.C. 2919.25. Because of two previous domestic violence convictions, the charge was enhanced to a felony of the third degree. At his arraignment, he pleaded not guilty and opted for a jury trial. On September 9, 2005, the trial commenced, and on September 13, 2005, the jury retired to deliberate. On September 14, 2005, the jury returned a verdict finding appellant guilty of domestic violence. On October 12, 2005, he was sentenced to a term of two years incarceration.
 {¶ 3} The incident that gave rise to the charges against appellant began on June 23, 2005. On that evening, appellant and his common law wife, Nancy Dalton, had just returned to their Cleveland home after taking their two young children to a carnival. Dalton believed appellant had been drinking alcohol at the carnival, but was not entirely sure. After putting the children to sleep, Dalton retired to her bedroom. At approximately 11:00 p.m., appellant came into Dalton's bedroom and asked if he could talk to her. He told Dalton that he may be a suspect in a woman's murder because he had been seen talking to her and was attracted to her. Dalton immediately became upset, and an argument ensued. As the argument progressed, Dalton told appellant that she was going to bed. Appellant left Dalton's room and went to his basement office where he retrieved a long pole used for window cleaning. He returned to Dalton's room and told her that he needed to explain himself. He then held the pole to Dalton's neck and began strangling her with it. After strangling Dalton, he pushed her onto a couch and covered her head with a blanket, in what Dalton believed was an attempt to suffocate her. He then pulled her hair and struck her in the face and the eye as they struggled over the window washing pole. After the struggle ended, appellant apologized to Dalton, saying that he was sorry and he did not mean to hurt her.
 {¶ 4} Throughout that evening and into the early morning hours of June 24, 2005, appellant continued to try to talk with Dalton, but when Dalton continually refused to speak with him, he became irate and ripped one of the telephones out of the wall. He then told Dalton that he had a gun. He further stated that he was angry with her brother for owing them money and was angry with her mother for lending a car to her brother. He told Dalton he could just kill her parents for giving a car to her brother and that he needed to go to her parents' house and speak with them.
 {¶ 5} Believing that she and her children were in danger, Dalton fled with her children to the nearby Cleveland police station. As she and her children ran to the station, Dalton approached a neighbor, who was watering his grass, and asked if he could call the police. When Dalton arrived at the police station, she flagged down police officer Brian Davis and his partner, who were in a marked police car. She told the officers about the incident. The officers noticed fresh bruising on her left arm and redness under her right eye. After interviewing Dalton, the officers responded to the home, but appellant was no longer there. Later that day, Cleveland police officer Michael Sheehan went to the home and found appellant passed out in a chair in the basement. Sheehan observed that appellant smelled of alcohol and was difficult to wake. Appellant was eventually arrested and charged with domestic violence. He brings this appeal, asserting three assignments of error for our review.
 {¶ 6} "I. The court erred when it acquiesced in the state's request that the court call Nancy Dalton as a court's witness."
 {¶ 7} Appellant first argues that the trial court abused its discretion when it called Dalton as a court's witness. He asserts that by having the victim testify as a court's witness, the trial court aided the state in providing misleading elements of evidence and detracting from the basic purpose of the litigation. We do not agree.
 {¶ 8} To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 50 OBR 481, 450 N.E.2d 1140.
 {¶ 9} "The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations." State v. Jenkins (1984),15 Ohio St.3d 164, 222, quoting Spalding v. Spalding (1959), 355 Mich. 382, 384-385. In order to have an abuse of that choice, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Id.
 {¶ 10} At trial, Dalton refused to testify about the physical harm aspect of the domestic violence charge, yet she had previously told police about the abuse and signed a police statement detailing the entire incident. Because of Dalton's conflicting behavior, the trial court determined that it would be most appropriate to call her as a court's witness.
 {¶ 11} Evid.R. 614(A) gives the trial court the authority to call its own witnesses for questioning. It also allows for the parties to cross-examine the witness after the court has concluded its questioning. Knowing that Dalton's recollections and actions were contradictory and that her testimony was essential to the case, the trial court decided it would be best to have her testify as a witness of the court. Throughout its questioning of Dalton, there was no indication that the trial court questioned the victim in a fashion that would confuse issues or detract from the crux of the case. Quite to the contrary, the court's examination of Dalton directly addressed her conflicting testimony and cleared up any confusion. In addition, both the state and the defense were given ample opportunity to question Dalton after the trial court's examination.
 {¶ 12} We do not find that the trial court's actions were unreasonable, arbitrary, or unconscionable when it called Dalton as its own witness. Accordingly, the trial court did not abuse its discretion, and the appellant's first assignment of error is overruled.
 {¶ 13} "II. The court erred when it overruled defense counsel's Rule 29 motion for acquittal because the defendant did not knowingly cause any physical harm."
 {¶ 14} Appellant next argues that the trial court erred when it denied his Crim.R. 29 motion for acquittal. He asserts that the state presented insufficient evidence to prove he caused physical harm to Dalton, warranting acquittal of the charge.
 {¶ 15} Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486. A conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982),457 U.S. 31, citing Jackson v. Virginia (1979), 443 U.S. 307.
 {¶ 16} Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. State v. Nicely
(1988), 39 Ohio St.3d 147. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass (1967),10 Ohio St.2d 230. On review, the appellate court must determine, after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259; Jackson v. Virginia (1979),443 U.S. 307.
 {¶ 17} We find no merit in appellant's assertion that the trial court erred when it denied his motion for acquittal. The state provided more than sufficient evidence to prove that appellant knowingly caused physical harm to Dalton. Although Dalton's recollections varied at times, her testimony at trial was fairly consistent with her prior written police statement and her comments to Officer Davis and his partner immediately following the incident. Dalton testified regarding the strangling, the attempted suffocation and the beating she sustained at the hands of appellant. In addition, Officer Davis testified about the morning when he and his partner were flagged down at the police station by Dalton. He recounted Dalton's statements regarding the incident, as well as the injuries he observed to her body. Davis testified that when Dalton approached him, he observed fresh bruising to her left arm and redness to her right eye, injuries consistent with domestic violence.
 {¶ 18} It is clear that the state presented sufficient evidence to support the trial court's decision denying appellant's motion for acquittal. Accordingly, the trial court did not err, and appellant's second assignment of error is overruled.
 {¶ 19} "III. The jury was deadlocked during the course of their deliberations. The court erred when it gave the Howard
instruction rather than the instruction suggested in Ohio Jury Instruction section 415.50(4)."
 {¶ 20} Appellant argues that the trial court abused its discretion when it gave the jury the Howard instruction, rather than the suggested Ohio Jury Instruction 415.50(4). He contends that because the Howard instruction did not discuss the possibility of a hung jury, the trial court coerced the jury into reaching its guilty verdict. We find no merit in this argument.
 {¶ 21} The Howard instruction was derived from the Ohio Supreme Court case State v. Howard (1989), 42 Ohio St.3d 18,537 N.E.2d 188, and was adapted directly from the Ohio Jury Instructions. The Howard instruction provides:
 {¶ 22} "The completion of this trial is of great importance to the parties and to the court. Not only has there been considerable expense to bring this matter to trial, but also expenditure of valuable time of the parties, the Court, the attorneys and, of course, your valuable time. I urge you to exert every possible effort to reach an agreement if you canconscientiously do so. (Emphasis added.)
 {¶ 23} "This is a new and difficult assignment for you. The process of discussion and deliberation in the jury room is necessarily slow and requires careful consideration and patience. I request that you return to your jury room, review the opinions of each juror to determine whether you have overlooked areas of agreement which could lead to a verdict.
 {¶ 24} "In a large proportion of cases, absolute certainly cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere consent to the conclusion of other jurors, each question submitted to you should be examined with proper regard and deference to the opinions of other jurors.
 {¶ 25} "You should consider it desirable that the case be decided. You are selected in the same manner, and from the same source as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent than this one.
 {¶ 26} "Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can honestly do so. You should listen to one another's arguments with disposition to be persuaded.
 {¶ 27} "Do not hesitate to reexamine your views and change your position if you are convinced that it is wrong. As there is disagreement, all jurors should reexamine their positions, given that a verdict has not been reached.
 {¶ 28} "Jurors more in favor of the State of Ohio should consider whether their position is correct, considering that it is not shared by others, others equally honest who have heard the same evidence with the same desire to arrive at the truth and under the same oath. Likewise, jurors more in favor of the defendant should consider whether their position is correct, considering it is not shared by other jurors."
 {¶ 29} Not only is the Howard instruction fair and impartial, but it directly addresses a situation in which a jury is at an impasse. The instruction does not coerce jurors, but rather leaves the matter in the hands of the jury, giving jurors the tools to make an effective decision. The Ohio Supreme Court expressed this same sentiment in State v. Brown (2003),100 Ohio St.3d 51, 60, when it held "we have twice upheld the use of a Howard charge, specifically finding that such an instruction is not coercive, and, in fact, is `intended for a jury that believes it is deadlocked, so as to challenge them to try one last time to reach a consensus.'"
 {¶ 30} Because the Howard instruction was specifically designed for juries in deadlock, it was entirely appropriate for the court to use in this case. It is clear from the language of the instruction, as well as from the Ohio Supreme Court's statements regarding the instruction, that the trial court's actions were not unreasonable, arbitrary, or unconscionable. Accordingly, the trial court did not abuse its discretion when it gave the Howard instruction, and appellant's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Colleen Conway Cooney, J., and Michael J. Corrigan, J., concur.