[Cite as *State v. Jacobs*, 2015-Ohio-4353.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 27545 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MICHAEL JACOBS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2013 10 2761 |

DECISION AND JOURNAL ENTRY

Dated: October 21, 2015

SCHAFER, Judge

{¶1} Defendant-Appellant, Michael Jacobs, appeals the judgment of the Summit County Court of Common Pleas convicting him of unlawful sexual conduct with a minor and corrupting another with drugs and sentencing him to a total prison term of four years. For the reasons that follow, we affirm the trial court's judgment.

I.

{¶2} The Summit County Grand Jury indicted Jacobs on the following charges: (1) gross sexual imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree; (2) unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), (B)(3), a felony of the third degree; and (3) corrupting another with drugs in violation of R.C. 2925.02(A)(4)(a), a felony of the fourth degree. The charges arose from alleged incidents that occurred between 2008 and 2013 when S.H., the victim, was between 11 and 15 years old. Jacobs is the stepbrother of S.H.'s mother and S.H. considered him to be her uncle.

{¶3}    During this time period, Jacobs was alleged to have touched S.H. inappropriately on her breasts and vagina.  These incidents occurred while S.H. visited Jacobs' house, and on some occasions, Jacobs purportedly gave marijuana to S.H. and her boyfriend, Brian Hunt.  Hunt, the son of a police officer, was present during some of the purported incidents of inappropriate touching and he eventually convinced S.H. to report these allegations to the police in April 2013.

{¶4}    This matter proceeded to a jury trial.  S.H. testified to the allegations described above and she stated that Jacobs made sexually suggestive comments about C.D., one of her friends.  During her testimony, a companion dog sat at S.H.'s feet while she was in the witness stand.  Hunt's testimony relayed his observation of Jacobs sexually touching S.H. and giving her marijuana while visiting Jacobs' house.  He further indicated that he smoked marijuana with S.H. and Jacobs and that he heard Jacobs' sexually suggestive comments about C.D.  Jacobs testified in his own defense and denied ever touching S.H. in a sexual manner or making sexually suggestive comments about C.D.  He also asserted that S.H. only reported her allegations after he confronted Hunt and her about the theft of prescription medications from his house and threatened to call the police.

{¶5}    Two medical professionals with Akron's Children Hospital testified regarding the examination that was performed on S.H. after she brought her allegations to the police.  Donna Abbott, a nurse practitioner, diagnosed S.H. as suffering from sexual abuse and indicated that it was not unusual for such victims to abstain from disclosing the abuse for a significant period of time.  She also opined that S.H. did not give any indication during the examination that she lying.  Cassandra Galloway, S.H.'s counselor with Child Guidance and Family Solutions,

testified that S.H. suffers from posttraumatic stress disorder and that she has never recanted her accusations against Jacobs.

{¶6} The State rebutted Jacobs' suggestion that S.H. and Hunt had a motive to fabricate their allegations by offering the testimony of Detective Linda Rinear of the Summit County Sheriff's Office. She indicated that in April 2013, she interviewed Jacobs regarding S.H.'s allegations. At that time, he did not inform Detective Rinear about any confrontation with S.H. and Hunt over the theft of prescription medications from his house. Rather, Jacobs suggested that S.H. may have reported the allegations because he would not allow Hunt to stay overnight with her at Jacobs' house. The video recording of the police interview was admitted into evidence.

{¶7} After receiving this evidence, the jury retired to deliberate. During the course of its deliberations, the jurors asked several questions of the trial court, including specifics about the factual record, the effect of their deadlock on one count, whether a transcript would be provided, and whether they could write down notes in the evening and then use them the next day during deliberations. The trial judge answered these questions outside the presence of counsel for the State and Jacobs. The jury eventually returned guilty verdicts on the unlawful sexual conduct and corruption of another with drugs counts. However, it found Jacobs not guilty of gross sexual imposition. The trial court subsequently sentenced Jacobs to four years for the unlawful sexual conduct conviction and 15 months for the corrupting another with drugs conviction. The trial court ordered that the sentences be served concurrently, leaving a total prison term of four years.

{¶8} Jacobs filed this timely appeal, presenting six assignments of error for our review. To facilitate our analysis, we elect to address the assignments out of order.

II.

**Assignment of Error I**

**Appellant was denied his right to a fair trial by an impartial jury when the trial court failed to correct a misstatement of the law by the prosecution.**

{¶9}    In his first assignment of error, Jacobs contends that the trial court erred by failing to correct the assistant prosecutor's representation to potential jurors during jury selection that the trial judge did not want the jury to return a deadlocked verdict.  We disagree.

{¶10}  Jacobs challenges the following exchange between the assistant prosecutor and a potential juror:

> Juror:         Otherwise, it's just like you're saying before, one against one, unless you can make me think that that guy that was victimized is legitimate, that he has a substantiation, there's higher –
>
> Prosecutor:   But you've got to do that if you're on the jury.
>
> Juror:         No.  You can hang.
>
> Prosecutor:   The Judge doesn't want you to hang.  When you go back there, you're going to be required to have a unanimous decision.
>
> Juror:         Unless you can do it conclusively – that's your responsibility to convince me.

Jacobs did not object when the assistant prosecutor said that the trial judge did not want the jury to hang.  This failure to object operates as a forfeiture of all but plain error.  *State v. Miller*, 9th Dist. Lorain Nos. 10CA009922, 10CA009915, 2012-Ohio-1263, ¶ 46.  The plain error doctrine, as it is outlined in Crim.R. 52(B), may only be invoked when the following three elements apply:

> First, there must be an error, i.e., a deviation from the legal rule.  * * * Second, the error must be plain.  To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings.  * * * Third, the error must have affected "substantial rights" * * * and affected the outcome of the trial.

*State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). We are cautioned that notice of plain error "is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶11} After considering the assistant prosecutor's statement to the potential juror, we determine that it does not reveal that the trial court committed plain error by failing to sua sponte correct it. Jacobs has not provided any authority to support his conclusory argument that the statement was incorrect or constituted an obvious defect in the trial proceedings. *See* App.R. 16(A)(7) (requiring briefs to have "[a]n argument containing the contentions of the appellant with respect to each assignment of error * * * with citations to the authorities * * * on which appellant relies"). Indeed, the assistant prosecutor's statement appears consistent with jury instructions that have been approved by both the Supreme Court of Ohio and the Court of Appeals. *See, e.g.*, *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, ¶ 121 (approving jury instruction that included admonishment that "[i]t is desirable that this case be decided"); *State v. Becerra*, 8th Dist. Cuyahoga No. 87374, 2006-Ohio-5245, ¶ 30 (stating that it was "entirely appropriate" for trial court to instruct jurors that "[t]he completion of this trial is of great importance to the parties and to the court"). Having failed to establish the existence of an error or obvious defect in the trial proceedings, we must reject Jacobs' argument.

{¶12} Accordingly, we overrule Jacobs' first assignment of error.

### Assignment of Error III

**Appellant was denied his right to a fair trial and due process of law when expert witness's [sic] were permitted to testify on the credibility of the victim in this case.**

**{¶13}** In his third assignment of error, Jacobs asserts that the trial court erred by allowing both Nurse Abbott and Ms. Galloway to testify regarding S.H.'s credibility. We disagree.

**{¶14}** Jacobs did not object to this testimony when it was offered at trial. Accordingly, he has forfeited all but plain error. *State v. Yarber*, 102 Ohio App.3d 185, 195 (12th Dist.1995).

**{¶15}** In raising this issue, Jacobs relies on the Ohio Supreme Court's declaration in *State v. Boston*, 46 Ohio St.3d 108 (1989), that "[a]n expert may not testify to the expert's opinion of the veracity of the statements of a child declarant." *Id*. at syllabus. This declaration was refined nine years later when the Court determined that "[a]n expert witness's testimony that the behavior of an alleged child victim of sexual abuse is consistent with behavior observed in sexual abused children is admissible under the Ohio Rules of Evidence." *State v. Stowers*, 81 Ohio St.3d 260, 261 (1998). Moreover, since *Boston*, several districts have found that a trial court does not commit reversible error when it allows a witness's opinion testimony about the veracity of an alleged child sex abuse victim's allegations so long as the child victim herself testifies. *See, e.g.*, *State v. L.E.F.*, 10th Dist. Franklin No. 13AP-1042, 2014-Ohio-4585, ¶ 29 ("Furthermore, [the child victim] testified at trial and the jury was able to independently ascertain the credibility of the victim."); *State v. Smith*, 12th Dist. Butler No. CA2004-02-039, 2005-Ohio-63, ¶ 21-22 (finding no *Boston* violation where three of the four child victims testified); *In re W.P.*, 8th Dist. Cuyahoga No. 84114, 2004-Ohio-6627, ¶ 13 ("With the victim's testimony, the juvenile court was able to ascertain the credibility of the victim; whereas in *Boston*, there was no independent indicia of reliability save for the expert witness who vouched for the child victim.").

**{¶16}** Here, Jacobs challenges the following testimony from Nurse Abbott:

Q:     And have you had the occasion to diagnose and treat children who have, in fact, withheld disclosure, as [S.H.] did in this case, for many years?

A:     Most of the children we see don't report right away.  And that's why most of the children we see, we're able to just schedule for an appointment as opposed to having them come in quickly, because it's not something that just happened.

* * *

Q:     Okay.  The number of years that we're dealing with here with [S.H.] where she's reporting this started when she was 11, which would have been about four years before you met with her, would that be unusual?

A:     No.

Q:     Was there anything that you saw in the course of * * * the hospital exams that were done * * * that would * * * indicate that [S.H.] was lying or making a story up?

A:     No.

Q:     Have you had occasion to come across children that were in fact, fabricating the story?

A:     We have seen children that we have heard later on from other agencies involved that the child wasn't being truthful when we saw them.

We determine that there is no plain error in the trial court's admission of this testimony.  Nurse Abbott's indication that S.H.'s delay in reporting her allegations of sexual activity with Jacobs was common for sexual abuse victims falls under the ambit of *Stowers* and was not improper. As to her evaluation of S.H.'s honesty during the exam process, any error was harmless since S.H. also testified, which allowed the jurors to make their own credibility determination.  *See State v. Bump*, 3d Dist. Logan No. 8-12-04, 2013-Ohio-1006, ¶ 83 (collecting cases where reviewing courts found that the trial court's admission of opinion testimony regarding the credibility of the victim was harmless since the victim testified).  Additionally, we note that any prejudice resulting from this testimony was reduced when Nurse Abbott testified that there have been instances when child victims were untruthful with her.

{¶17} We likewise conclude that the trial court did not plainly err by allowing the following testimony from Ms. Galloway:

Q: At any time during her meetings at your office, has [S.H.] ever disclosed that what she has said happened with regard to Mr. Jacobs was not true?

A: No.

Q: She never recanted her statements?

A: No.

This testimony does not constitute an evaluation of S.H.'s credibility. Rather, it merely relates that S.H. has not changed her allegations when discussing this matter with Ms. Galloway. Indeed, when directly asked whether S.H. ever lied to her, Ms. Galloway explicitly refused to make a credibility evaluation by testifying, "I don't know. If she has, she hasn't told me." *See In re W.P.* at ¶ 14 (rejecting appellant's argument that the victim's mother impermissibly testified to the veracity of the victim since "upon review of the transcript, the victim's mother did not testify as to her daughter's truthfulness").

{¶18} Accordingly, we overrule Jacobs' third assignment of error.

### Assignment of Error V

**Appellant was denied his right to a fair trial when the trial court permitted the prosecution to have the Summit County Prosecutor's Office's companion dog present during the victim's testimony.**

{¶19} In his fifth assignment of error, Jacobs argues that the trial court erred by allowing S.H. to testify while a companion dog rested as her feet. We disagree.

{¶20} The trial court is vested with broad discretion as to how to control and order the interrogation of witnesses at trial. *State v. Young*, 2d Dist. Montgomery No. 18874, 2002 WL 471846, * 3 (Mar. 29, 2002), citing *State v. McGuire*, 80 Ohio St.3d 390, 400-401 (1997). A trial court abuses its discretion when its decision is "unreasonable, arbitrary, or unconscionable."

*Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

**{¶21}** Evid.R. 611(A) provides as follows:

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of truth; (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

When applying Evid.R. 611(A) in the context of a criminal prosecution for alleged sexual abuse of a minor child, courts should "recognize that the protection of child victims of sexual abuse forms an important public policy goal in this state and across the nation." *State v. Eastham*, 39 Ohio St.3d 307, 310 (1988). Due to this recognition, "[s]pecial accommodations * * * are often allowed for child victims of sexual abuse to minimize the emotional trauma and stress of having to testify in a courtroom full of strangers, along with the accused." *State v. Gutierrez*, 3d Dist. Hancock No. 5-10-14, 2011-Ohio-3126, ¶ 100; *see also* Holder, *All Dogs Go to Court: The Impact of Court Facility Dogs as Comfort for Child Witnesses on a Defendant's Right to a Fair Trial*, 50 Hous.L.Rev. 1155, 1158 (2013) ("Children experience unique challenges on the witness stand, and in response, they receive special accommodations.").

**{¶22}** It appears as though Evid.R. 611(A)'s application to the use of a companion dog is a matter of first impression in both this Court and this state. In considering how to rule on this issue, we are mindful that other districts have found no reversible error when child victims have been allowed to testify via closed-circuit television from another room, *In re Howard*, 119 Ohio App.3d 33, 38 (12th Dist.1997), while sitting in a religious minister's lap, *State v. Branch*, 3d Dist. Allen No. 1-12-44, 2013-Ohio-3192, ¶ 93, and while holding a teddy bear, *State v. Presley*,

10th Dist. Franklin No. 02AP-1354, 2003-Ohio-6069, ¶ 45. We are also aware that courts in other states have decided that the use of a companion dog during a child victim's testimony does not constitute reversible error. *E.g.*, *People v. Chenault*, 227 Cal.App.4th 1503, 1515 (2014) (permitting use of companion dog for 11- and 13-year old sexual abuse victims since "[w]e do not believe the presence of a support dog is inherently more prejudicial than the presence of a support person"); *People v. Tohom*, 969 N.Y.S.2d 123, 132 (N.Y.App.2013) (permitting use of companion dog for 15-year old sexual abuse victim since "we perceive no rational reason why * * * a court's exercise of sensitivity should not be extended to allow the use of a comfort dog where it can be shown that such animal can ameliorate the psychological and emotional stress of the testifying child witness").

{¶23} A review of the case law also produces the Connecticut Appellate Court's decision in *State v. Devon D.*, 150 Conn.App. 514 (2014). There, the court concluded that trial courts have "the inherent general discretionary authority to permit a suitably trained dog to sit near a witness when a need clearly is demonstrated[.]" *Id*. at 549. But, it found that the facts of that case did not warrant the use of a companion dog since the child witness had only met the companion dog an hour before testifying and had indicated that she was "quite afraid of the dog initially." *Id*. at 550. The court also noted that the companion dog had never been used before at trial and was not a certified service dog. *Id*.

{¶24} These cases reveal three principles that guide us here. First, trial courts are in the best position to determine how to control trial proceedings, especially the mode of interrogating witnesses. Second, in light of the trial courts' position and their discretion, it is not erroneous for them to approve a variety of special allowances for child victims of sexual abuse. And, third,

these special allowances may include using a companion dog during the child victim's testimony under certain circumstances.

{¶25} Based on the circumstances of this matter, we cannot conclude that the trial court abused its discretion by allowing S.H. to testify while a companion dog sat at her feet. It is critical to our resolution of this issue to recount the assistant prosecutor's representations regarding the use of the companion dog:

> Judge, the State is making a motion to have the office's companion dog present during the victim's testimony. She came into my office last week and when she was there, she saw [the companion dog] and bonded with him immediately. She requested, even before I had met with her, that he be present. She wanted to see him again when she was in my office. And she, in fact, is with him right now as she sits in the witness room.

These representations were buttressed when S.H. testified that the dog's presence made her feel "more comfortable." The record also reflects that the companion dog is trained and has been used in a variety of trials before the Summit County Court of Common Pleas. In light of these circumstances, which are markedly different from those addressed in *Devon D.*, as well as evidence indicating that S.H. suffers from psychological ailments that relate to her sexual abuse diagnosis, we cannot second-guess the trial court's determination on this point.

{¶26} Jacobs' trial counsel objected to the use of the companion dog on the basis that S.H. was 17 years old at the time of the trial. But, Jacobs has failed to offer any authority to support the proposition that there is a certain age cut-off for the use of special procedures on behalf of alleged sexual abuse victims. *See* App.R. 16(A)(7). *Compare State v. Torres*, 60 Conn.App. 562, 570 (2000) (permitting 20-year old victim to testify with her fiancé seated next to her about sexual abuse that occurred during her childhood). We also believe it is relevant to note that while S.H. was 17 years old at the time of trial, she was testifying about alleged sexual

abuse that occurred when she was between 11 and 15 years old and which had caused her to suffer from psychological trauma.

{¶27} In sum, Evid.R. 611(A) authorizes trial courts to allow an alleged victim to testify with a companion dog present under particular circumstances. Based on the circumstances and arguments raised in this matter, we cannot conclude that the trial court abused its discretion by allowing S.H. to testify with a companion dog at her feet.

{¶28} Accordingly, we overrule Jacobs' fifth assignment of error.

### Assignment of Error VI

**The trial court abused its discretion in admitting other acts testimony in this case.**

{¶29} In his sixth assignment of error, Jacobs contends that the trial court should have excluded evidence of his sexually-charged comments regarding C.D. as impermissible other acts evidence under Evid.R. 404(B). We disagree.

{¶30} Before analyzing the admissibility of this evidence, we must outline the scope of our review. Jacobs challenges both S.H.'s and Hunt's testimony that he made a statement indicating he would perform a sex act on C.D. At trial, Jacobs timely objected to this testimony, but no specific basis for the objection was contemporaneously stated on the record. The State argues that the objections were based on impermissible hearsay. Jacobs counters that they were based on impermissible other acts testimony under Evid.R. 404(B).

{¶31} Evid.R. 103(A)(1) requires that a party seeking to exclude evidence state "a timely objection or motion to strike * * * [that includes] the specific ground for objection, if the specific ground was not apparent from the context[.]" The challenged testimony from S.H. is as follows:

Q:     So, the days that you were talking about [days with standardized testing occurring at school], what is it that you heard Michael Jacobs say and to who?

[Trial Counsel]:     Objection.

The Court:     Overruled.  You may answer.

A:     [Describing Jacobs' statement of his desire to perform a sex act on C.D.]

Hunt's testimony on this point proceeded as follows:

Q:     Have you ever heard Mr. Jacobs say anything inappropriate regarding underage kids?  * * * What have you heard him say?

[Trial counsel]:     Objection.

The Court:     Overruled.

* * *

A:     Well, * * * we went over for testing – the school had testing, and you don't have to be there until 11 or so.  And we went to [Jacobs]' house during the week and he had smoked marijuana with us.  And this girl, [C.D.], was there [Hunt then described Jacobs' statement of his desire to perform a sex act on C.D.].

**{¶32}** We determine that the basis for these objections was impermissible hearsay. Later in S.H.'s testimony, Jacobs' trial counsel responded to the assistant prosecutor's question, "Did you ever hear Mr.  Jacobs say anything else like that?" by stating, "Renew my objection for the record, Your Honor.  Hearsay testimony."  This renewal of the objection combined with the assistant prosecutor's previous question referring to Jacobs making a statement creates a context that reflects an objection on the basis of hearsay testimony.  We see no reason to reach a different conclusion in regard to Hunt's testimony since the assistant prosecutor's question there also referred to Jacobs making a statement.  Consequently, Jacobs only preserved appellate review of his hearsay objection and he has not properly preserved the Evid.R. 404(B) issue. *See State v. Williams*, 9th Dist. Summit No. 228277, 2006-Ohio-4720, ¶ 17 (finding that the

defendant forfeited evidentiary issue since the specific ground for the objection in trial court was different from the one asserted on appeal). Rather, he has forfeited all but plain error in regard to this issue. *See State v. Tibbetts*, 92 Ohio St.3d 146, 161 (2001) ("Because he failed to object at trial on the specific ground raised here, Tibbetts has forfeited the issue, limiting us to a plain error analysis [of the defendant's Evid.R. 404(B) argument].").

**{¶33}** Although Jacobs has preserved plain error review in regard to the Evid.R. 404(B) issue, he has failed to argue the existence of plain error on appeal. This Court has repeatedly noted that it will not sua sponte fashion an unraised plain error argument and then address it. *E.g.*, *State v. McCrae*, 9th Dist. Summit No. 27387, 2015-Ohio-1803, ¶ 8 (collecting cases). As a result, we will not consider whether the testimony about Jacobs' statement was properly admitted under Evid.R. 404(B). *See State v. Ellis*, 9th Dist. Summit No. 27013, 2014-Ohio-4186, ¶ 27 ("[A]s Ellis has failed to argue plain error on appeal, this Court will not consider whether the admission of the disputed evidence within the context of Evid.R. 404(B) constituted plain error.").

**{¶34}** Accordingly, we overrule Jacobs' sixth assignment of error.

### Assignment of Error II

**Appellant was denied his right to a fair trial by an impartial jury when the trial court responded improperly to the juries [sic] questions.**

**{¶35}** In his second assignment of error, Jacobs argues that the trial court erred by failing to make the jury's questions part of the record and by meeting with the jurors to answer their questions without the presence of counsel. We disagree.

**{¶36}** As to Jacobs' first argument, we determine that the jury questions were entered into the record. The questions were included as an attachment to the exhibits and jury

instructions for the trial proceedings. Accordingly, there was no error on the trial court's part for the failure to include the jury questions in the record.

{¶37} As to Jacobs' second argument, we likewise determine that the trial court did not commit reversible error by answering the questions without counsel present. Jacobs provides no authority to support his argument on this point. *See* App.R. 16(A)(7). He also fails to demonstrate how the absence of both his trial counsel and counsel for the State prejudiced his substantial rights. We additionally note that the record reflects that the trial judge consulted with counsel before answering the jury's question as to whether the jurors could write down their thoughts at home and then use those notes during their deliberations. And, as to the other questions, the trial court merely informed the jurors that no transcript would be provided and it instructed jurors to keep deliberating and to rely on their collective memories. We can find no prejudice in such benign responses.

{¶38} Accordingly, we overrule Jacobs' second assignment of error.

### Assignment of Error IV

**Appellant's convictions were based on insufficient evidence and against the manifest weight fo [sic] the evidence.**

{¶39} In his fourth assignment of error, Jacobs argues that his convictions were neither supported by sufficient evidence nor consistent with the manifest weight of the evidence. We disagree on both points.

{¶40} A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* Although we conduct de novo review when considering a sufficiency of the evidence challenge, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120751, 2013-Ohio-4775, ¶ 33.

**{¶41}** A sufficiency challenge is legally distinct from a manifest weight challenge. *Thompkins* at 387. Accordingly, when applying the manifest weight standard, we are required to consider the whole record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Courts are cautioned to only reverse a conviction on manifest weight grounds "in exceptional cases," *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340, where the evidence "weighs heavily against the conviction," *Thompkins* at 387.

**{¶42}** This matter implicates Jacobs' conviction on unlawful sexual conduct in violation of R.C. 2907.04 and corrupting another with drugs in violation of R.C. 2925.02(A)(4)(a). R.C. 2907.04(A) relevantly provides that:

> No person who is eighteen years of age or older shall engage in sexual conduct with another * * * when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.

Unlawful sexual conduct constitutes a third degree felony where the offender is at least 10 years older than the victim. R.C. 2907.04(B)(3). Sexual conduct is relevantly defined as

> vaginal intercourse between a male and a female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and without privilege to do so, the

insertion, however slight, or any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another.

R.C. 2907.01(A).

**{¶43}** R.C. 2925.02(A)(4), meanwhile, pertinently provides that "[n]o person shall knowingly * * * furnish or administer a controlled substance to a juvenile who is at least two years the offender's junior, when the offender knows the age of the juvenile or is reckless in that regard[.]" Pursuant to R.C. 2925.01(A), a controlled substance for the purposes of R.C. 2925.02 is defined as "a drug, compound, mixture, preparation or substance included in schedule I, II, III, IV or V." R.C. 3719.01(C). Marijuana is a schedule I drug. R.C. 3719.41(C)(19).[1]

**{¶44}** Although Jacobs couches this assignment of error as challenging both the sufficiency of the evidence and the manifest weight, Jacobs acknowledges S.H.'s testimony that he inserted his finger into her vagina and performed oral sex on her on several occasions. He also acknowledges that S.H. testified to Jacobs giving her marijuana. This testimony was sufficient to support both of Jacobs' convictions. *See State v. Johnson*, 9th Dist. Lorain No. 13CA010496, 2015-Ohio-1689, ¶ 13 (concluding that testimony of an eyewitness was "alone sufficient to support [the defendant]'s conviction").

**{¶45}** Rather than focusing on sufficiency, Jacobs' fourth assignment of error turns on his manifest weight argument that the State's witnesses, particularly S.H. and Hunt, were not credible and that his testimony was. *See United States v. Henderson*, 626 F.3d 326, 341 (6th Cir.2010) (stating that an "implicit attack on witness credibility is simply a challenge to 'the weight of the government's evidence and not the sufficiency of the evidence'"), quoting *United*

---

[1] There was also testimony at trial indicating that Jacobs provided Zanaflex pills to S.H. Although the State represented Zanaflex to be a controlled substance at trial, it does not appear that Zanaflex's active ingredient, tizanidine hydrochloride, is listed on any of the schedules contained in R.C. 3719.41.

*States v. Graham*, 622 F.3d 445, 449 (6th Cir.2010). But, as a reviewing court that relies on a "cold, paper record," we must abstain from supplanting the jury's evaluation of credibility. *In re B.B.*, 8th Dist. Cuyahoga No. 81948, 2003-Ohio-5920, ¶ 31 ("Because the versions of events presented by the State and B.B. were so diametrically opposed in almost all relevant aspects, we are unwilling to simply choose B.B.'s version, as he would have us do[.]"); *see also Johnson* at ¶ 15 ("Further, the mere fact that [the defendant] offered his own self-serving contradictory testimony does not support a reversal on manifest weight grounds since the trier of fact '"is free to believe all, part, or none of the testimony of each witness."'"), quoting *State v. Cross*, 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 35, quoting *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. This principle especially applies here since we discern no reason in the record to second-guess the trial court's determination of credibility and Jacobs' guilt.

{¶46} S.H. testified in detail to the sexual activity that occurred between Jacobs and her. *See State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 95 (rejecting manifest weight argument where the victim gave "detailed testimony"). Additionally, Hunt's testimony corroborated S.H.'s testimony regarding Jacobs providing marijuana to her and he said that he observed Jacobs touch S.H.'s breasts and bottom. The jury could certainly choose to believe S.H.'s corroborated testimony as opposed to Jacobs' uncorroborated testimony.

{¶47} Furthermore, the credibility of Jacobs' testimony was effectively diminished when he was confronted with his statements to police. Jacobs testified that S.H. and Hunt were motivated to fabricate their allegations because of the purported confrontation over the theft of prescription drugs from Jacobs' house. On cross-examination, Jacobs explicitly testified that he told Detective Rinear about this confrontation during his police interview. But, this claim was

directly contradicted when Detective Rinear testified in rebuttal that Jacobs did not divulge any confrontation of S.H. and Hunt over prescription drugs despite the fact that it allegedly occurred a mere month earlier. The video recording of Jacobs' police interview confirmed Detective Rinear's testimony and it reflected that when pressed about S.H.'s possible motives, Jacobs simply stated that she could have brought forth the allegations because he refused to allow Hunt to stay overnight at his house. In light of this inconsistency in Jacobs' explanation for S.H.'s allegations, we cannot determine that the jury lost its way and caused a manifest miscarriage of justice. *See State v. Lopez*, 90 Ohio App.3d 566, 583 (9th Dist.1993) ("[T]he credibility of defendant's witnesses was severely damaged by the inconsistencies in their stories from one telling to the next and, in regard to Comley, the number of times his story changed completely. We cannot certify that a miscarriage of justice occurred in this case.").

{¶48} In sum, there is sufficient evidence in the record to sustain Jacobs' convictions and his convictions are not against the manifest weight of the evidence. Accordingly, we overrule Jacobs' fourth assignment of error.

## III.

{¶49} Having overruled all of Jacobs' assignments of error, we affirm the judgment of the Summit County Court of Common Pleas.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

WHITMORE, J.
CONCURS.

CARR, P. J.
CONCURRING IN JUDGMENT ONLY.

{¶50} I concur but write separately to emphasize the extreme importance of responding to jury questions in a proper manner and making a record of the communications whether in open court or in written responses.

{¶51} Generally, a defendant has the right to be present with counsel when a judge communicates with the jury regarding jury instructions. *State v. Abrams*, 39 Ohio St.2d 53 (1974). "Consequently, any communication between the court and the jury outside the presence of a defendant is error and may be grounds for a new trial." *State v. Jones*, 8th Dist. Cuyahoga

No. 88203, 2007-Ohio-1717, ¶ 15, citing *Bostic v. Connor*, 37 Ohio St.3d 144, 149 (1988); *Kirk v. State*, 14 Ohio 511 (1846); *Jones v. State*, 26 Ohio St. 208 (1875).

**{¶52}** However, not all improper communications are prejudicial and warrant a new trial. Improper communications between a judge and the jury

> constitute good cause for a new trial only if the communications prejudiced the defendant's right to a fair trial. *Abrams,* 39 Ohio St.2d at 56; *State v. Jenkins*, 15 Ohio St.3d 164, 233-237 (1984). When the communications are substantive, such as when the trial court clarifies an instruction or provides an additional instruction to the jury, courts have found that the error is prejudicial. *See State v. Alvarado*, 8th Dist. Cuyahoga No. 78629, 2001 WL 1075724 (Sept. 13, 2001). But when the trial court merely restates previously given instructions, the communication has been found to be harmless. *See Abrams, supra*.

*Jones*, 2007-Ohio-1717, ¶ 16.

**{¶53}** In addition, even though a defendant has the right to be present when the trial court responds to a jury question in open court, he does not have that same right when the judge responds to a question in writing as long as counsel is present. *State v. Campbell*, 90 Ohio St.3d 320, 346 (2000).

APPEARANCES:

NATHAN A. RAY, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.