[Cite as *State v. Williams*, 2021-Ohio-2491.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

JESSE M. WILLIAMS II

    Appellant

C.A. No.     29547

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 2019-01-0258

DECISION AND JOURNAL ENTRY

Dated: July 21, 2021

TEODOSIO, Judge.

{¶1} Defendant-Appellant, Jesse Williams II, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} R.M. is a developmentally disabled woman who resides in a ground-level apartment in Akron. Though she lives on her own and holds down a job, R.M. is a client of an organization that provides her with various services. Individuals from that organization transport her to and from work, administer her daily medications, accompany her to appointments, help manage her funds, and clean her apartment. During the timeframe relevant herein, R.M. was 61 years old.

{¶3} Sometime between 2:00 a.m. and 3:00 a.m. on December 3, 2018, a man knocked on R.M.'s front door. R.M. was watching television from her couch at the time and opened her door to see what the man wanted. The man came inside and told R.M. he was there to rob her. R.M. refused to give him any money and attempted to use her cordless phone to call the police.

The man snatched the phone from her, however, and forced her to her bedroom where he anally raped her. When he finished, the man brought R.M. into the bathroom and wiped her down. He then left the apartment and took with him R.M.'s nightshirt, her phone, and the items he had used to wipe her down.

{¶4} R.M. walked to the apartment next door and alerted her neighbor that she needed help. The neighbor called 911, and the police responded to the scene. R.M. was taken to the hospital where she underwent a sexual assault examination. Male DNA was detected on swabs taken from the back panel of her underwear, and the police ultimately were able to trace that DNA profile to Mr. Williams. The police presented R.M. with a photo array about five weeks after she was attacked. Upon viewing the array, she identified Mr. Williams as her attacker.

{¶5} T.L. resides in an apartment that is located within one mile of R.M.'s apartment. Sometime around 1:00 a.m. on December 14, 2018, a man attempted to push his way through T.L.'s bedroom window. Because her apartment is partially underground, the bottom sill of her bedroom window sits at ground-level. T.L. had the window open but the screen closed as she laid on her bed watching television. As she sat up a bit to stretch, she saw a man had the upper half of his body partially through her window. T.L. froze in fear for a few moments before rushing over, commanding the man to get out, and shoving him backward. The man briefly pushed back against T.L. but she succeeded in forcing him out through the window. Once the man ran off, T.L. called 911. The police took her report but were unable to help further as the man's identity was unknown. At that point, the police had yet to identify Mr. Williams as the man who had attacked R.M. and were unaware that the two cases might be related.

{¶6} The day after R.M. selected Mr. William's photo from a photo array, the police issued a be on the lookout for Mr. Williams and released a photo of him to the media. T.L.

happened to see the photo on the news and recognized Mr. Williams as the man who had tried to climb through her bedroom window. She called the police, and detectives arranged to transport her to the police station for an interview. Before the interview could occur, T.L. received a news story notification about Mr. Williams on her cell phone and once again saw his photo. Subsequently, she was interviewed at the police station and viewed a photo array. The photo array contained a different photo of Mr. Williams than the police had released to the media. Upon viewing the array, T.L. selected Mr. Williams' photo and identified him as her attacker.

{¶7} A grand jury indicted Mr. Williams on multiple counts. With respect to the incident involving R.M., he was charged with aggravated burglary, rape, two counts of kidnapping, burglary, and tampering with evidence. With respect to the incident involving T.L., he was charged with attempted burglary, burglary, and intimidation of an attorney, victim, or witness. The State later dismissed the aggravated burglary count, the two kidnapping counts, the burglary count related to T.L., and the intimidation count. A jury then found Mr. Williams guilty of the remaining counts. The trial court sentenced him to a total of 11 years in prison and classified him as a tier III sexual offender.

{¶8} Mr. Williams now appeals from his convictions and raises three assignments of error for our review. Because two of his assignments of error are interrelated, this Court consolidates them for purposes of our analysis.

II.

## ASSIGNMENT OF ERROR I

JESSE M. WILLIAMS II WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO FILE A MOTION TO SUPPRESS A TAINTED EYEWITNESS IDENTIFICATION.

## ASSIGNMENT OF ERROR II

JESSE M. WILLIAMS II WAS FURTHER DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN DEFENSE COUNSEL FAILED TO REQUEST A JURY INSTRUCTION REGARDING THE UNRELIABILITY OF EYEWITNESS IDENTIFICATIONS.

{¶9}     In each of the foregoing assignments of error, Mr. Williams argues that he received ineffective assistance of counsel.  First, he argues that his counsel was ineffective for failing to file a motion to suppress the photo array identification that T.L. made at the police station.  Second, he argues that his counsel was ineffective for not requesting a jury instruction on the unreliability of cross-racial identification.  For the following reasons, this Court rejects his arguments.

{¶10}     "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62.  To prove ineffective assistance of counsel, one must establish that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Counsel's performance is deficient if it falls below an objective standard of reasonable representation.  *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus.  Prejudice can be shown by proving "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."  *Id.* at paragraph three of the syllabus.  "[T]he Court need not address both *Strickland* prongs if an appellant fails to prove either one."  *State v. Lortz*, 9th Dist. Summit No. 23762, 2008-Ohio-3108, ¶ 34.

**Motion to Suppress T.L.'s Photo Array Identification**

{¶11}     Mr. Williams argues that he received ineffective assistance of counsel because his attorney never moved to suppress the photo array identification that T.L. made at the police station. He claims that the photo array was unduly suggestive because the detective who compiled it failed to pay attention to the skin tones of the men he included.  According to Mr. Williams, there was a

"distinct difference" in the skin tones of the men selected for the array, as only he and one other man had darker complexions. He argues that it is highly likely T.L. selected his photo because his darker skin tone made him more conspicuous. Further, he argues that a variety of other circumstances affected the reliability of T.L.'s photo array identification. He notes that she only saw her assailant for a short period of time in a dimly lit room under the stress of a startling event. He also notes that her identification came after she had already seen his photo in connection with an alleged burglary and rape. Because T.L.'s identification was unreliable and the result of an unduly suggestive procedure, Mr. Williams argues, his attorney should have moved to suppress it.

{¶12}  "Defense counsel is not required to file a motion to suppress in every case." *State v. Griffin*, 9th Dist. Summit No. 28829, 2019-Ohio-37, ¶ 22. It is a tactical decision that generally will not support a claim of ineffective assistance of counsel. *See State v. Liu*, 9th Dist. Summit No. 24112, 2008-Ohio-6793, ¶ 32. "Even if there is a reasonable probability that the motion would have been granted, the failure to pursue it cannot be prejudicial unless there is also a reasonable probability that, without the excluded evidence, the defendant would have been acquitted." *State v. Rucker*, 9th Dist. Summit No. 25081, 2010-Ohio-3005, ¶ 46.

{¶13}  Upon review, Mr. Williams has not established ineffective assistance of counsel regarding his attorney's decision not to file a motion to suppress. Even if we were to assume that his attorney's decision was not tactical and that the motion would have been granted, Mr. Williams has not shown that there exists a reasonable probability that, but for T.L.'s photo array identification, he would have been acquitted. *See id. See also Bradley*, 42 Ohio St.3d 136 at paragraph three of the syllabus. T.L.'s photo array identification was not the only pretrial identification she made. She made an earlier identification based on the photo of Mr. Williams that she saw in the news. She specifically testified that the news photo prompted her to contact

the police because she recognized Mr. Williams as the man who tried climbing through her window. Mr. Williams has not challenged T.L.'s earlier identification or explained how it was a product of state action. *See State v. Smith*, 8th Dist. Cuyahoga No. 98280, 2013-Ohio-576, ¶ 38-40; *State v. Ware*, 10th Dist. Franklin No. 04AP-43, 2004-Ohio-6984, ¶ 49-55; *State v. Roper*, 9th Dist. Summit No. 20836, 2002-Ohio-7321, ¶ 40-42 (pretrial identifications not subject to exclusion where they stemmed from media reports rather than state action). He also has not addressed the impact of the in-court identification T.L. made while testifying, wherein she identified Mr. Williams as her attacker. *See State v. Vukelich*, 9th Dist. Summit Nos. 12578, 12628, 1987 WL 9480, *5 (Apr. 8, 1987). Mr. Williams has not shown that, but for his attorney's failure to seek the suppression of T.L.'s photo array identification, there is a reasonable probability he would have been acquitted. As such, we cannot conclude that he received ineffective assistance of counsel on that basis. *See Bradley* at paragraph three of the syllabus; *Rucker* at ¶ 46. Mr. Williams' first assignment of error is overruled.

### Jury Instruction on Cross-Racial Identification

{¶14} Next, Mr. Williams argues that he received ineffective assistance of counsel because his attorney failed to request a jury instruction on cross-racial identification. He argues that cross-racial identification is notoriously difficult and disproportionately responsible for many wrongful convictions. Because he is a black man and T.L. is a white woman, Mr. Williams asserts, the jury should have been cautioned against the unreliability of cross-racial identification. He notes that his attorney failed to call an expert on cross-racial identification or explore the issue when cross-examining T.L. He argues that he was prejudiced by his attorney's failure to seek a specific instruction on cross-racial identification because the jury never had the opportunity to evaluate T.L.'s testimony in light of that information.

{¶15}   Initially, we note that Mr. Williams' second assignment of error only concerns his attorney's failure to seek a jury instruction.  He has not assigned as error that his attorney failed to present expert testimony or cross-examine witnesses on the issue of cross-racial identification.  "This Court has consistently held that an appellant's captioned assignment of error provides us with a roadmap on appeal and directs our analysis." *State v. Jackson*, 9th Dist. Summit No. 28691, 2018-Ohio-1285, ¶ 14.  We "will not address arguments that fall outside the scope of an appellant's captioned assignment of error." *State v. Martynowski*, 9th Dist. Lorain No. 17CA011078, 2017-Ohio-9299, ¶ 18.  Because Mr. Williams has only alleged error as a result of his attorney's failure to seek a jury instruction, we limit our review to that issue.

{¶16}   The Ohio Supreme Court has recognized that

[a] trial court is not required in all criminal cases to give a jury instruction on eyewitness identification where the identification of the defendant is the crucial issue in the case and is uncorroborated by other evidence.  A trial court does not abuse its discretion in deciding that the factual issues do not require, and will not be assisted by the requested instructions, and that the issue of determining identity beyond a reasonable doubt is adequately covered by other instructions.

*State v. Guster*, 66 Ohio St.2d 266 (1981), syllabus.  Further, this Court has rejected ineffective assistance of counsel arguments based on an attorney's failure to request a misidentification instruction where the court's general instructions "'adequately covered that identity [must] be established beyond a reasonable doubt * * *.'" *State v. Evans*, 9th Dist. Medina No. 07CA0057-M, 2008-Ohio-4772, ¶ 17, quoting *State v. Klein*, 9th Dist. Wayne No. 2280, 1988 WL 3223, *2 (Jan. 13, 1988).  *Accord State v. Webb*, 9th Dist. Summit No. 27424, 2015-Ohio-2380, ¶ 46.

{¶17}   Upon review, Mr. Williams has not established ineffective assistance of counsel due to his attorney's failure to request a jury instruction on cross-racial identification.  The record reflects that the trial court instructed the jury on witness credibility.  It instructed the jurors that they could consider each witness' manner of testifying, the reasonableness of their testimony, "the

opportunity that each witness had to see, hear and know the things concerning which he or she testified[,]" the accuracy or inaccuracy of their memory, their candor and frankness or lack thereof, their intelligence or lack thereof, any interest or bias they might have in the outcome of the case, and "all other facts and circumstances surrounding the testimony which, in [each juror's] good judgment, adds or detracts from witness credibility." The court also instructed the jurors that a defendant is presumed innocent and must be acquitted unless the State establishes, beyond a reasonable doubt, every essential element of each individual charge against him. Mr. Williams has not claimed that the court's general jury instructions were in any way deficient.

{¶18} Although T.L. and her assailant were not the same race, she testified that "really the part [she] looked at was his eyes." T.L. stated that she looked at her assailant "dead in his eyes" for "a good 45 seconds to a minute" as she struggled with him and attempted to force him back through her window. She identified Mr. Williams in court as the man who attacked her and testified that his eyes stuck out in her mind because he had "really tired eyes." Given the general instructions the court issued and the nature of T.L.'s testimony, we cannot conclude that there exists a reasonable probability that, but for his attorney's failure to request a jury instruction on cross-racial identification, the jury would have acquitted Mr. Williams. *See Bradley* at paragraph three of the syllabus. Accordingly, Mr. Williams' second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT PLAINLY ERRED WHEN IT ALLOWED AN EMOTIONAL SUPPORT ANIMAL TO ACCOMPANY THE VICTIM WHILE SHE TESTIFIED, EVEN THOUGH SHE DOES NOT NORMALLY HAVE AN EMOTIONAL SUPPORT ANIMAL.

{¶19} In his third assignment of error, Mr. Williams argues that the trial court committed plain error when it allowed R.M. to testify with the aid of a companion dog. He claims that the presence of the dog fostered the impression that R.M. was vulnerable and could not face him alone.

He further claims that the dog's presence elicited additional sympathy for R.M. For the following reasons, this Court rejects his argument.

{¶20} Mr. Williams acknowledges that the plain error standard applies herein because he did not object to the presence of the companion dog or otherwise raise his argument in the lower court. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "To establish plain error, one must show (1) an error occurred, i.e., a deviation from a legal rule, (2) the error is plain, i.e., an obvious defect in the proceedings, and (3) the error affected a substantial right, i.e., affected the outcome of the proceedings." *State v. Grant*, 9th Dist. Summit No. 29259, 2019-Ohio-3561, ¶ 5, citing *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, ¶ 36. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶21} "The trial court is vested with broad discretion as to how to control and order the interrogation of witnesses at trial." *State v. Hasenyager*, 9th Dist. Summit No. 27756, 2016-Ohio-3540, ¶ 8. Included within that discretion is the authority of the court to

> exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of truth; (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

Evid.R. 611(A). This Court has recognized the authority of a trial court "to allow an alleged victim to testify with a companion dog present under particular circumstances." *State v. Jacobs*, 9th Dist. Summit No. 27545, 2015-Ohio-4353, ¶ 27 (upholding court's decision to allow companion dog to accompany 17-year-old sexual abuse victim on the stand). *See also Hasenyager* at ¶ 7-13 (upholding court's decision to allow companion dog to accompany 13-year-old sexual abuse victim on the stand).

{¶22} Under these particular facts and circumstances, we cannot conclude that Mr. Williams has established plain error as a result of the trial court's decision to allow R.M. to testify with the aid of a companion dog. The trial court's exact rationale for allowing the dog to accompany R.M. on the stand is not apparent from the record, as Mr. Williams did not object to the dog's presence and the dog was not the subject of any pretrial discussions. The record does reflect, however, that R.M. was developmentally disabled and received a wide array of supportive services. Her caseworker testified that R.M. did not drive, pay her own bills, administer her own medications, or clean her own apartment. She also testified R.M. was very private and did not interact with a lot of people. Thus, there was evidence tending to show that R.M. was more vulnerable than the average 61-year-old woman.

{¶23} The record also reflects that the trial court issued the jury two separate sets of instructions about the companion dog that appeared with R.M. Directly before R.M. took the stand, the court advised the jury that a companion dog would be accompanying her. The court instructed the jury not to "make any assumption or draw any conclusions based on the presence of a companion dog" or to speculate as to why the court had allowed the dog to be present. The court instructed:

> Remember that the testimony of each witness must be decided based on the evidence, and you must not allow sympathy, bias, or prejudice to enter into your consideration as you listen to the testimony of any witness.

> And this is especially true when we have the presence of an outside factor such as a companion dog entering the courtroom.

The court issued a second instruction about the dog during jury instructions. At that time, the court again told the jurors not to make any assumptions or draw any conclusions about the presence of the dog or speculate as to why the dog had been present. The court also reminded the jurors not to draw "any inference favorably or negatively to either side because of the dog's presence." It is

presumed that the jury followed the court's instructions. *See State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 103.

{¶24} This Court cautions that the use of a companion dog as a witness aid is a special allowance that is appropriate only "under particular circumstances." *Jacobs*, 2015-Ohio-4353, at ¶ 27. Our opinion should not be read as an endorsement of the use of a companion dog in every case wherein the alleged victim of a sexual assault is an adult, even if that adult is vulnerable. Our only conclusion is that Mr. Williams has not demonstrated plain error as a result of the trial court's decision to allow R.M. to testify with the aid of a companion dog. That is because the record is devoid of the trial court's underlying rationale, the testimonial evidence at least supports the conclusion that R.M. suffered from developmental disabilities that rendered her vulnerable, and the trial court repeatedly issued the jury cautionary instructions about the presence of the dog. Mr. Williams has not shown that this is the exceptional case where the trial court committed a manifest miscarriage of justice by allowing R.M. to testify with the aid of a companion dog. *See Long*, 53 Ohio St.2d 91 at paragraph three of the syllabus. Accordingly, his third assignment of error is overruled.

III.

{¶25} Mr. Williams' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---
THOMAS A. TEODOSIO
FOR THE COURT

CARR, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

R. JESSICA MANUNGO, Assistant State Public Defender, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.