[Cite as *State v. Horton*, 2017-Ohio-9078.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

STATE OF OHIO

    Appellee

v.

DELBERT HORTON

    Appellant

C.A. No.    16AP0024

APPEAL FROM JUDGMENT
ENTERED IN THE
WAYNE COUNTY MUNICIPAL COURT
COUNTY OF WAYNE, OHIO
CASE No.    2016 CR-B 000001

DECISION AND JOURNAL ENTRY

Dated: December 18, 2017

---

CARR, Judge.

**{¶1}** Defendant-Appellant Delbert Horton appeals from the judgment of the Wayne County Municipal Court. This Court affirms.

I.

**{¶2}** In January 2016, a complaint was filed against Horton alleging that he committed domestic violence by causing or attempting to cause physical harm to his wife in violation of R.C. 2919.25(A).

**{¶3}** The matter proceeded to a jury trial at which both Horton and his wife testified. Horton's wife testified that on January 3, 2016, in the evening, Horton came home, grabbed a water bottle from her, and accused her of drinking alcohol. The bottle did have vodka in it, and Horton's wife acknowledged that she had an alcohol problem. Horton was very angry and yelled at their children, who were playing nearby, to go to their rooms. The Horton's adopted daughter

testified that, while she did not see anything that happened, she heard Horton yelling, but did not hear her mother, Horton's wife, yelling.

{¶4} Horton continued to yell and push his wife. Hortons' wife got up and started moving towards the stairs and Horton continued to yell at her and push her. According to Horton's wife, she "kind of stumbled" down the first set of stairs to a landing in an attempt to get away from him. They continued arguing and Horton pushed her down the second set of stairs and she landed on her back at the bottom of the stairs. Horton "stood over top of [his wife] and continued to yell at [her] and kick and punch and step on [her]." He stepped on her legs and side. She did not quite remember getting up but remembered going into the garage and Horton following her. Horton continued berating her and she could not figure out how to get him to stop, so she grabbed some nearby firewood and started throwing it at him. She did not think she hit him. She also grabbed a bed post and swung it at him. She did not think she made contact but Horton claimed that she did. Horton then opened the garage door, got into his vehicle, and left. Horton's wife denied hitting or pushing Horton and instead maintained that she was only trying to get away from him. Horton's wife had cuts along her arms and bruises on her legs and side. Photographs were submitted into evidence demonstrating her injuries. Horton's wife identified blood on the walls in some of the photographs as being her own blood.

{¶5} Ten to fifteen minutes after the assault, Horton's wife's daughter N.W. arrived at the house to visit her mother. Horton's wife was still crying. She told N.W. that Horton "beat the crap out of [her]." N.W. called 911. Deputy Adam Bupp[1] of the Wayne County Sheriff's Office responded to the call. Deputy Bupp testified that Horton's wife was visibly shaking and

_____

[1] The transcript indicates that Deputy Bupp's first name is Adan, but the remainder of the record refers to him as Adam.

crying when he arrived on the scene. He immediately noticed the blood on her arms. Horton's wife reported being in pain all over and that she was sore. Deputy Bupp opined that Horton's wife had a slight odor of alcohol about her but did not appear to be impaired. Horton's wife told Deputy Bupp that Horton had injured her during a physical altercation. Deputy Bupp stated that, in his experience, Horton's wife's injuries looked like she was grabbed by her arms or hit. Deputy Bupp took photographs of Horton's wife's injuries and the home. He testified that the blood on the wall appeared to be fresh.

{¶6} Deputy Bupp located Horton at his mother's house in Canton and arrested him. Horton seemed relaxed and did not appear to have any injuries, nor did he complain of any. Deputy Bupp averred that, in his experience, individuals whom claim self-defense tend to stay at the scene and report what happened.

{¶7} Horton testified in his own defense, relaying a much different version of events. Horton admitted to pushing his wife to the ground three times, but denied kicking, punching, or scratching her. Horton indicated that, on that day, he came up from the basement and observed his wife on the couch with a 12 ounce water bottle in her hand. Her eyes were closed. Horton told the children to go to their rooms so they would not witness any arguing. Horton grabbed the bottle from her and smelled it. It smelled like vodka and there was only approximately an ounce left in it. When Horton grabbed the bottle, Horton's wife jumped up, took a swing at Horton's head and hit him. Horton pushed her back onto the couch. Horton's wife got up and the couple began arguing. Horton expressed his desire to separate and his disappointment with her drinking. They both were shoving each other. Horton then attempted to go down the stairs to get his things to leave, as his bedroom was downstairs while his wife's was upstairs. Horton asserted that, at that point, he had to push his wife in order to get down the stairs because she

would not let him leave and was blocking the way. While Horton was gathering his things, his wife continued to argue with him and he had to push past her to get into the garage. As he was putting his belongings in the car, his wife began throwing firewood at him. One piece landed right behind his head but did not hit him and at least one piece hit the car, leaving a dent that was photographed. Horton testified that he picked up a piece of the wood that had been thrown at him and walked over to his wife and told her that she had to stop because it was getting dangerous. She had to let him go. According to Horton, his wife then swung a bed post at him and hit him. In response, he pushed her on the side of her body with the wood he was holding and she fell to the ground in the garage.

{¶8} After that, Horton dropped the firewood and got in the car and left. He was afraid that he would get hurt as the situation was escalating. As the garage door was closing, his wife was approaching him with two pieces of wood in her hands but she did not exit the garage. Horton testified that at no point during the incident was he trying to hurt his wife. Horton asserted that he was sore for a few days but did not notice any bruising.

{¶9} Ultimately, the jury found Horton guilty and the trial court sentenced him. Horton has appealed, raising two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED PLAIN ERROR BY MAKING CERTAIN COMMENTS TO THE JURY ABOUT THE EVIDENCE DURING CLOSING ARGUMENT.

{¶10} Horton argues in his first assignment of error that the trial court committed plain error in making certain comments to the jury during closing argument. Under the circumstances of this particular case, we do not agree.

**{¶11}** Horton's trial counsel did not object to the trial court's comments, and thus this issue is only reviewable for plain error. *See* Crim.R. 52(B); *State v. Jackson*, 9th Dist. Summit No. 27479, 2015-Ohio-5096, ¶ 51. "[T]he accused bears the burden of proof to demonstrate plain error on the record * * * and must show an error, i.e., a deviation from a legal rule that constitutes an obvious defect in the trial proceedings[.]" (Internal quotations and citations omitted.) *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 22. "However, even if the error is obvious, it must have affected substantial rights, and [w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." (Internal quotations and citations omitted.) *Id.* "The accused is therefore required to demonstrate a reasonable probability that the error resulted in prejudice * * *." (Emphasis omitted.) *Id.* Thus, it was Horton's burden to demonstrate that, absent the comments, the jury would not have found him guilty. *See State v. Morgan*, Slip Opinion No. 2017-Ohio-7565, ¶ 51.

**{¶12}** "'In exercising his [or her] duty to control a criminal trial pursuant to R.C. 2945.03, the trial judge is to remain impartial and refrain from making comments which may influence a jury.'" *Jackson* at ¶ 52, quoting *State v. McCarley*, 9th Dist. Summit No. 22562, 2006-Ohio-1176, ¶ 9. "'"[T]he judge must be cognizant of the effect of his [or her] comments upon the jury[.]"'" *Jackson* at ¶ 52, quoting *McCarley* at ¶ 9, quoting *State v. Wade*, 53 Ohio St.2d 182, 187 (1978), *vacated and remanded on other grounds*, 438 U.S. 911 (1978). "A judge's 'participation by * * * comment must be scrupulously limited, lest the court, consciously or unconsciously, indicate to the jury its opinion on * * * the credibility of a witness.'" *Jackson* at ¶ 52, quoting *State ex rel. Wise v. Chand*, 21 Ohio St.2d 113 (1970), paragraph three of the syllabus. "Furthermore, 'juries are highly sensitive to every utterance by the trial judge' and any

comments by the trial judge must be appropriate under the circumstances." *McCarley* at ¶ 9, quoting *Wade* at 188.

> Generally, in determining whether a trial judge's remarks were prejudicial, the courts will adhere to the following rules: (1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel.

*Wade* at 188; *see also McCarley* at ¶ 9.

**{¶13}** Here, during closing argument, the State told the jury that when Horton saw his wife had vodka he "beat her. He beat her down two flights of stairs." Defense counsel responded, reminding the jury that closing argument was not evidence. Defense counsel then pointed out that "when the Prosecutor sa[id] [Horton] beat his wife down the stairs[, t]hat's not what the evidence was. The evidence was that he pushed past her…" The trial court, sua sponte, then interjected the following: "I'm going to stop you * * *. There is evidence of that. It's not, it's not your version but there was evidence of that. Okay. Go ahead and proceed."

**{¶14}** Defense counsel did not object to the trial court's comments, but now challenges them on appeal. The trial court's comments are very troubling and clearly inappropriate. However, Horton has failed to meet his burden to demonstrate that the comments rise to the level of plain error. *See Rogers,* 143 Ohio St.3d 385, 2015-Ohio-2459, at ¶ 22. In his brief on appeal, Horton seems to argue that the nature of the comments themselves was so inherently prejudicial as to warrant the conclusion that plain error exists. While the trial court did without a doubt commit obvious error by interjecting the foregoing comments into the closing argument, Horton has not explained how, in light of the evidence adduced at trial, the comments affected the outcome. *See id*.; *see also* App.R. 16(A)(7).

{¶15} Further, in reviewing the evidence that was submitted to the jury, we can only conclude that, even absent the inappropriate comments, the jury would have found Horton guilty. Horton himself admitted that he pushed his wife approximately three times causing her to fall to the ground. The second time occurred when, according to Horton, his wife was blocking the stairs preventing him from going downstairs to gather his belongings. However, Horton acknowledged at trial that, at that time, his wife did not have a weapon and was not hitting him. In addition, Horton testified that, after his wife had thrown firewood at him and hit him with a bed post, he picked up a piece of firewood and hit her in the side of her body with it, causing her to fall to the ground. While Horton's wife had demonstrable injuries that were photographed and shown to the jury, and identified blood on the wall as being her own, Horton admitted that he did not have any visible injuries from being hit with the bed post. Finally, Horton's wife testified that ten to fifteen minutes after the assault, her daughter, N.W., arrived at the house. N.W. testified that Horton's wife told N.W. that Horton "beat the crap out of [her]."

{¶16} In light of the totality of the evidence presented to the jury and Horton's limited argument on appeal, we cannot say that Horton met his burden of demonstrating that the trial judge's comments resulted in plain error. *See Rogers* at ¶ 22. Accordingly, we overrule Horton's first assignment of error.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION BY ALLOWING, OVER OBJECTION, HEARSAY TESTIMONY AND TESTIMONY FROM THE SAME WITNESS WHO WAS WITHOUT PERSONAL KNOWLEDGE OF THE MATTER.

{¶17} Horton argues in his second assignment of error that the trial court erred in allowing certain testimony. Specifically, he maintains that N.W. should have been prohibited from testifying that Horton's wife told her that Horton "beat the crap out of [Horton's wife]." In

addition, Horton challenges N.W.'s testimony about what she noticed about the hallway after she arrived at the house; she testified over objection that, down the steps, "there was blood on the walls from where * * * [Horton] had pushed [Horton's wife.]"

{¶18} "The decision to admit or exclude evidence lies in the sound discretion of the trial court." *State v. Haywood*, 9th Dist. Summit No. 28040, 2017-Ohio-8299, ¶ 53, citing *State v. Sage*, 31 Ohio St.3d 173, 180 (1987). "Absent an issue of law, this Court, therefore, reviews the trial court's decision regarding evidentiary matters under an abuse of discretion standard of review." *Haywood* at ¶ 53, quoting *State v. Aguirre*, 9th Dist. Lorain No. 13CA010418, 2015-Ohio-922, ¶ 6. An abuse of discretion indicates that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶19} Horton first argues that N.W.'s testimony, over objection, that Horton's wife told N.W. that Horton "beat the crap out of [Horton's wife]" was inadmissible hearsay. He maintains there was "no foundation offered to prove that [Horton's wife's] quoted statement was made while under the stress of excitement caused by the event * * * as required by Evid.R. 803(2)." However, because we conclude that the trial court reasonably found that the testimony was admissible under the excited-utterance exception, we disagree.

{¶20} That exception provides that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the rule against hearsay irrespective of whether the declarant is available as a witness. Evid.R. 803(2). "To be admissible under Evid.R 803(2) as an excited utterance, a statement must concern some occurrence startling enough to produce a nervous excitement in the declarant, which occurrence the declarant had an opportunity to observe, and must be made before there had been time for such nervous excitement to lose a domination over

his reflective faculties." (Internal quotations and citations omitted.) *State v. Flowers*, 9th Dist. Summit No. 25841, 2012-Ohio-3783, ¶ 19.

**{¶21}** At trial, Horton's wife testified that her daughter, N.W., arrived ten to fifteen minutes after the assault happened while Horton's wife was "just sitting there crying and just in shock and just scared." At that point, Horton's wife had not even given thought to filing a police report. N.W. testified that she went over to Horton's wife's house for a "random visit" and when she arrived, Horton's wife was crying and "had cuts and bruises all over her arms and [N.W. then asked] what happened." In response, Horton's wife said, Horton "beat the crap out of [her]." N.W. then called 911. In fact, Deputy Bupp testified that, even when he arrived at the scene, Horton's wife was visibly shaking and crying.

**{¶22}** Given the foregoing, we cannot say that the trial court abused its discretion in admitting the foregoing testimony of N.W. Despite Horton's argument to the contrary, there was evidence from which the trial court could have reasonably concluded that Horton's wife was under "the stress of excitement caused by the [assault]" when she told N.W. that Horton "beat the crap out of [Horton's wife]." Evid.R. 803(2). Prior to N.W.'s testimony, Horton's wife testified about her mental state following the assault and about when N.W. arrived. Horton has not pointed to any law indicating that the trial court could not consider that testimony in determining that N.W.'s testimony was admissible under the excited-utterance exception. *See* App.R. 16(A)(7).

**{¶23}** Horton next argues that the trial court abused its discretion in admitting testimony about what N.W. noticed about the hallway after she arrived at the house; she testified that, down the steps, "there was blood on the walls from where * * * [Horton] had pushed [Horton's wife.]"

Horton argues that N.W.'s statement was not based on personal knowledge as N.W. did not witness the assault.

{¶24} Evid.R. 602 provides, in part, that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony." Here, the record is clear that N.W. did not witness the assault on Horton's wife and the State offered no evidence to suggest that N.W. would have personal knowledge of how blood came to be on the walls. Accordingly, we agree the statement was not admissible. *See* Evid.R. 602. However, Horton's wife herself testified that the blood on the walls was her own and that Horton had pushed her down the stairs. Further, she discussed the photographs of her injuries, which included cuts and scratches. Given the foregoing, we can only conclude that the admission of N.W.'s testimony was harmless error. *See* Crim.R. 52(A) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.").

{¶25} Accordingly, we overrule Horton's second assignment of error.

III.

{¶26} Horton's assignments of error are overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

TODD E. CHEEK, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.