[Cite as *State v. Pariscoff*, 2019-Ohio-172.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

STATE OF OHIO

    Appellee

    v.

MARK ANTHONY PARISCOFF

    Appellant

C.A. No.    17AP0023

APPEAL FROM JUDGMENT
ENTERED IN THE
WAYNE COUNTY MUNICIPAL COURT
COUNTY OF WAYNE, OHIO
CASE No.    2017 CR-B 000049

DECISION AND JOURNAL ENTRY

Dated: January 22, 2019

TEODOSIO, Presiding Judge.

{¶1}    Defendant-Appellant, Mark Pariscoff, appeals from his conviction in the Wayne County Municipal Court. This Court affirms.

I.

{¶2}    One afternoon, R.B. received a phone call from her twin brother, Mr. Pariscoff. Mr. Pariscoff phoned R.B. to ask for help because he was in need of a place to live. An argument soon erupted between them, however, and Mr. Pariscoff proceeded to make several threats against R.B. Over the course of the next three hours, he called her cell phone 28 more times and repeatedly threatened her, prompting her husband to call the police.

{¶3}    As a result of his phone calls, Mr. Pariscoff was charged with telephone harassment in violation of R.C. 2917.21(A)(1) and (A)(5). A jury found him guilty of the former subdivision and not guilty of the latter. The court then sentenced him to thirty days in jail, but stayed his sentence for purposes of his appeal.

{¶4}   Mr. Pariscoff now appeals from his conviction and raises two assignments of error for our review.

II.

## ASSIGNMENT OF ERROR ONE

APPELLANT'S CONVICTION FOR TELEPHONE HARASSMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THERE WAS NO EVIDENCE THAT HE MADE ANY TELEPHONE CALLS TO HIS SISTER WITH THE INTENT TO ABUSE, INTIMIDATE, OR HARASS HER.

{¶5}   In his first assignment of error, Mr. Pariscoff alleges that his conviction is against the manifest weight of the evidence. Specifically, he argues that the jury lost its way when it concluded that he called R.B. with the specific intent to abuse, intimidate, or harass her. We disagree.

{¶6}   This Court has stated:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶7} The telecommunications harassment statute prohibits any person from "knowingly mak[ing] * * * a telecommunication * * * to another * * * with purpose to harass, intimidate, or abuse any person at the premises to which the telecommunication is made, whether or not actual communication takes place between the caller and a recipient * * *." R.C. 2917.21(A)(1). "[T]he statute focuses on the caller rather than on the content of the speech * * *" and "may be violated even when no speech or conversation at all occurs." *Akron v. Hawthorne*, 9th Dist. Summit No. 13670, 1989 WL 10333, *1 (Feb. 8, 1989). By its terms, "it is the intent with which the call is made that establishes the criminality of the conduct." *Id.*

{¶8} R.B. testified that she first spoke with Mr. Pariscoff on the phone at about 3:00 p.m. She could not remember which of them initiated their first call, but Mr. Pariscoff later confirmed that he was the caller. Though she and Mr. Pariscoff were twins, R.B. testified that they had not spoken for some time. She stated that Mr. Pariscoff wanted to talk to her because he was losing his home to foreclosure and needed a place to stay. He became irate, however, when she told him that he could stay with her, but his two dogs could not. At that point, he "unleashed all kinds of foul language on [her]," "[t]hreaten[ed] to slap [her] upside [her] head when he saw [her]," and cautioned her to "watch [her] back."

{¶9} R.B. testified that, over the course of the next three hours, Mr. Pariscoff called her 28 more times. During the calls, he continued to threaten her and, at one point, "said that he would set [her] house on fire." She testified that Mr. Pariscoff's threats concerned her because she had reason to believe he would follow through with them. While she admitted that she responded unkindly to his remarks, R.B. denied that she ever threatened him.

{¶10} R.B. testified that she repeatedly hung up on Mr. Pariscoff. At some point between his 9th and 15th call, she told him to stop contacting her, but he nevertheless continued

to call. R.B. stated that the calls continued even after she told him that she was going to call the police.

{¶11} Deputies Matthew Gajda and Paul Brumme responded to R.B.'s residence after her husband called to report Mr. Pariscoff's behavior. Deputy Gajda testified that he observed 29 incoming, logged calls from Mr. Pariscoff on R.B.'s cell phone and noted that she appeared nervous and upset as she described her exchanges with him. After taking her report, the two deputies placed several calls to Mr. Pariscoff and finally succeeded in contacting him. Deputy Gajda then introduced himself and advised Mr. Pariscoff to stop calling R.B. According to the deputy, Mr. Pariscoff stated that he would not stop contacting his sister. He also "stated that his sister was an a**hole[,] * * * used other abusive language[,] and just had complete disregard for [the deputies] prompting him not to contact her anymore."

{¶12} Mr. Pariscoff testified in his own defense and admitted calling his sister numerous times. He claimed that he had to do so because his cell phone kept losing its signal and dropping his calls. It was his testimony that R.B. never asked him to stop calling her and the first time he received that instruction was when he was on the phone with the deputies. He stated that he was "totally stressed out" when he initially called R.B., but only became angry when she refused to help him and suggested that he kill his dogs. The two then argued and exchanged unkind remarks. According to Mr. Pariscoff, he never threatened R.B. or said he would burn her house down. Yet, he also testified that he only threatened R.B. to the extent she threatened him. With regard to his statement that "she had better watch her back," he claimed that he was only sharing with R.B. what another female had said to him about R.B.

{¶13} Mr. Pariscoff argues that the jury lost its way when it concluded that he knowingly called R.B. with the purpose to harass, intimidate, or abuse her. He argues that the

greater weight of the evidence showed that he called R.B. with the intent to ask for her help and only repeatedly called her because his cell phone dropped his calls. Although the two argued and exchanged unkind remarks, Mr. Pariscoff asserts that it was never his intent to harass R.B.

{¶14} Having reviewed the record, we cannot conclude that the jury lost its way when it found that Mr. Pariscoff knowingly called R.B. with the purposes to harass, intimidate, or abuse her. *See* R.C. 2917.21(A)(1). Even if Mr. Pariscoff lacked the intent to harass, intimidate, or abuse R.B. when he initially called her, the State set forth evidence that he called her 28 more times in the course of three hours. There was evidence that, during those calls, Mr. Pariscoff threatened R.B. and ignored her commands to stop contacting her. Though Mr. Pariscoff testified to the contrary and offered at least some alternative explanations for his behavior, "the jury was in the best position to evaluate the credibility of the witnesses and it was entitled to believe all, part, or none of [their] testimony * * *." *State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 29. "A verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's witnesses rather than the defendant's version of the events." *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. Mr. Pariscoff has not shown that this is the exceptional case where the evidence weighs heavily against his conviction. *See Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175. Accordingly, his first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

THE TRIAL COURT DENIED APPELLANT A FAIR TRIAL BY ACTING IN A PREJUDICIAL MANNER AGAINST APPELLANT AND HIS COUNSEL IN FRONT OF THE JURY.

{¶15} In his second assignment of error, Mr. Pariscoff argues that the trial court deprived him of a fair trial when it repeatedly acted toward him in a prejudicial manner. He

asserts that the court impeded his defense by interrupting his counsel's examinations and forbidding him from inquiring on certain points to clarify matters for the jury. He also notes that the court repeatedly admonished him during his testimony, despite the fact that the State had not raised any objections. According to Mr. Pariscoff, the court "engaged in a pattern of behavior that suggested to the jury that [it] did not believe in the merits of [his] case and that what [he] had to say was unimportant and irrelevant." For the following reasons, we reject his argument.

{¶16} "[T]he influence of the trial judge on the jury is necessarily and properly of great weight * * *." *State v. Wade*, 53 Ohio St.2d 182, 187 (1978), *vacated on other grounds*, *sub nom. Wade v. Ohio*, 438 U.S. 911 (1978), quoting *Starr v. United States*, 153 U.S. 614, 626 (1894).

> The law, therefore, requires that during the course of a trial, the court must refrain from remarks which are calculated in any way to influence the minds of the jury. In general, any improper remarks made by the trial court in the presence of the jury which have a tendency to prejudice their minds against one of the parties will afford grounds for a new trial or for a reversal.

(Internal citations omitted.) *State v. Bowman*, 9th Dist. Wayne No. 2623, 1991 WL 108572, *1 (June 12, 1991). *See also State v. McCarley*, 9th Dist. Summit No. 22562, 2006-Ohio-1176, ¶ 9-10. Even so, a defendant must timely object to any allegedly improper remarks or conduct on the part of the court to preserve the issue for appellate review. *See id.* at *2, citing *State v. Williams*, 51 Ohio St.2d 112 (1977), paragraph one of the syllabus. If a defendant fails to object or otherwise call the errors to the trial court's attention, he forfeits all but plain error. *Bowman* at *2. *Accord State v. Horton*, 9th Dist. Wayne No. 16AP0024, 2017-Ohio-9078, ¶ 11.

{¶17} The record reflects that Mr. Pariscoff failed to object or otherwise call to the attention of the trial court any of the alleged prejudicial conduct he now cites in support of his assignment of error. While his failure to do so would not preclude him from arguing plain error

on appeal, he has not set forth a claim of plain error. "This Court has repeatedly noted that it will not sua sponte fashion an unraised plain error argument and then address it." *State v. Jacobs*, 9th Dist. Summit No. 27545, 2015-Ohio-4353, ¶ 33. Because Mr. Pariscoff has not argued plain error on appeal, this Court will not construct an argument on his behalf. *See id. Accord State v. Tinley*, 9th Dist. Medina No. 17CA0062-M, 2018-Ohio-2239, ¶ 11. Accordingly, his second assignment of error is overruled.

III.

{¶18} Mr. Pariscoff's assignments of error are overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CARR, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

CHRISTINA I. REIHELD, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.