[Cite as *State v. Henry*, 2026-Ohio-1012.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

DEVON HENRY

    Appellant

C.A. Nos.    31508
                 31509

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    CR 24-03-0832
               CR 23-08-2553-A

DECISION AND JOURNAL ENTRY

Dated: March 25, 2026

STEVENSON, Judge.

{¶1} Defendant-Appellant Devon Henry appeals from the judgment of the Summit County Court of Common Pleas that found him guilty of aggravated trafficking in drugs, aggravated possession of drugs, having weapons while under disability, aggravated burglary, and assault. For the reasons set forth below, this Court affirms.

I.

{¶2} This appeal arises from two separate cases. The first case pertains to a traffic stop of a vehicle by the Akron Police on July 14, 2023. The undisputed facts are as follows. Sergeant Utomhin Okoh stopped the vehicle because he observed it cross over a double-yellow line without using a turn signal as it pulled into a parking lot. Mr. Henry was the right rear passenger in the vehicle. During the stop, Sergeant Okoh observed a firearm and two fanny packs in plain view on the floorboard by Mr. Henry's feet. Together, the fanny packs contained an extended magazine

for a firearm, 10 separately wrapped plastic baggies with 35 grams of methamphetamine, several bags of marihuana, and a scale. After the officers removed Mr. Henry from the vehicle, another firearm was found underneath one of the fanny packs. Based on Mr. Henry's criminal history, he was under disability and thus restricted from having firearms.

{¶3} Mr. Henry was indicted on one count of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2)(C)(1)(D), a felony of the second degree; aggravated possession of drugs in violation of R.C. 2925.11(A)(C)(1)(C), a felony of the second degree; trafficking in marihuana, in violation of R.C. 2925.03(A)(2)(C)(3)(a), a felony of the fifth degree; possession of marihuana in violation of R.C. 2925.11(A)(C)(3)(b), a misdemeanor of the fourth degree; and having weapons while under disability in violation of R.C. 2923.13(A)(3)(B), a felony of the third degree, including an attendant weapons forfeiture specification.

{¶4} The second case pertains to an incident that occurred on February 28, 2024, at T.S.'s residence in Lakemore, Ohio. T.S. and Mr. Henry have two children together. The record shows that on that day, T.S.'s cousin, V.C., was caring for the children at T.S.'s residence. T.S. had previously told Mr. Henry that he was not permitted at her house. The children visited with Mr. Henry only as T.S. deemed appropriate as there were no custody orders between them. Nonetheless, Mr. Henry and his then girlfriend, Baleria Speed, came to T.S.'s residence because Mr. Henry wanted to see his children. In Mr. Henry's attempt to enter the residence, a fight ensued between him and V.C. In the Ring camera video footage that was admitted into evidence, Mr. Henry was heard yelling "open the door" and V.C. yelled back "[y]ou can't come in here" and "[d]on't f***ing touch me." Both the Ring camera footage and witness testimony from a neighbor across the street reflected that Mr. Henry then pulled V.C. from the residence onto the front porch. A few minutes later, Mr. Henry and Ms. Speed left the residence and V.C. called the police. V.C.

told the 911 operator that Mr. Henry punched her multiple times in the face. The responding police officer observed V.C. to have bruising and swelling on her face around the right eye and described V.C. as "[s]hook up, a little scared" and "panicked at what just occurred." V.C. told the officer and another neighbor that Mr. Henry forced his way into the house, hit her multiple times, knocked her down, then dragged her outside.

{¶5} Mr. Henry was indicted on one count of aggravated burglary in violation of R.C. 2911.11(A)(1), 2911.11(B), a felony of the first degree, and one count of assault in violation of R.C. 2903.13(A), 2903.13(C), a misdemeanor of the first degree. His bond was revoked in the first case.

{¶6} Both cases were tried together before a jury in April 2025. Prior to trial, the State dismissed the marihuana charges in the first case. Also prior to trial, Mr. Henry's counsel orally moved to sever the two cases. The State objected, arguing that the cases were separate and distinct and from two different jurisdictions. The court denied the motion.

{¶7} Regarding the first case, the State presented the testimony of three Akron Police Officers, body camera footage and photographs taken by the police, the lab report on the drugs, and the operability reports on the guns. Mr. Henry presented the testimony of the driver of the vehicle, Mr. Samuel Joseph-Wilson. In the second case, the State presented the testimony of Lakemore Police Officer Stephen Cagaric, the homeowner T.S., a neighbor boy C.P., and C.P.'s mother, S.P. The State also presented Ring camera footage from S.P.'s residence and V.C.'s 911 call. Mr. Henry presented the testimony of Baleria Speed.

{¶8} The jury found Mr. Henry guilty on all the charges. Mr. Henry was sentenced to a prison term of six to nine years total on the two cases. Mr. Henry timely appealed and asserts five assignments of error for our review.

II.

## ASSIGNMENT OF ERROR NUMBER ONE

**APPELLANT WAS DEPRIVED OF HIS RIGHTS TO DUE PROCESS AND A FAIR AND IMPARTIAL JURY WHEN THE TRIAL COURT IMPROPERLY JOINED TWO UNRELATED INDICTMENTS FOR TRIAL, IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTIONS FIVE, TEN, AND SIXTEEN OF THE OHIO CONSTITUTION AND RULES EIGHT, THIRTEEN, AND FOURTEEN OF THE OHIO RULES OF CIVIL (SIC) PROCEDURE.**

{¶9}    Here, Mr. Henry argues that the court erred in joining his two cases for trial.  In support, he argues that neither party filed a written motion requesting that the cases be joined for trial, and therefore, his counsel was surprised that there would be a single trial.  He also points to the fact that the court's written orders did not specifically state that it was consolidating the two cases for trial.  Mr. Henry claims there was no analysis by the trial court as to why or how the two cases could be tried together without causing prejudice to Mr. Henry.   Mr. Henry maintains that the two cases served as "'propensity evidence'" against each other with the State portraying him as "a violent thug who carried guns, drugs, and was violent against women."

{¶10}   As previously noted, Mr. Henry's counsel made an oral motion to sever prior to trial which the trial court denied.  In denying the motion, the court stated that "[i]t's somewhat rare to sever trial, and I think . . . that there will not be any difficulty with the jury keeping the fact pattern separate[.]"  Mr. Henry's counsel did not renew the motion at either the close of the State's case or at the conclusion of the evidence.  We have said the following about joinder under those circumstances:

> It is well-settled that the law favors joinder. While Crim.R. 8 governs the joinder of multiple offenses in a single indictment, Crim.R. 14 addresses the joinder of completely separate indictments. A defendant claiming prejudice by the joinder of offenses may move for severance under Crim.R. 14. If it appears that a defendant . . . is prejudiced by a joinder of ... defendants ... for trial together ..., the court shall

... grant a severance of defendants, or provide such other relief as justice requires. *To preserve a claimed error under Crim.R. 14, however, a defendant must renew his motion to sever either at the close of the State's case or at the conclusion of all of the evidence. If a defendant fails to renew his Crim.R. 14 motion, he forfeits the issue on appeal, all but for a claim of plain error.*

(Emphasis added.) (Internal quotations and citations omitted) *State v. Fowler*, 2025-Ohio-3055, ¶ 15 (9th Dist.).

{¶11} As Mr. Henry did not renew his motion to sever at either the close of the State's evidence or at the conclusion of all the evidence, he has forfeited all but plain error on appeal. Mr. Henry does not argue plain error. He does not cite to the plain error standard nor provide this Court with any reasoning or case law in support of plain error as required by App.R. 16(A)(7). The words "plain error" do not appear anywhere in his merit brief under this assignment of error. As we have previously stated, we will not develop an argument for an appellant who fails to do so. *Cardone v. Cardone,* 1998 WL 224934, *8 (9th Dist. May 6, 1998). Accordingly, we need not address the merits of Mr. Henry's argument here as it is forfeited.

{¶12} Even if we could somehow construe Mr. Henry's argument as sounding in plain error, it would nonetheless fail. First, the court gave the jury a limiting, cautionary instruction regarding its obligation to consider all the charges separately, stating that:

The charges set forth in each count in the indictment constitute a *separate and distinct* matter. *You must consider each count and the evidence applicable to each count separately*, and you must state your findings as to each count *uninfluenced* by your verdicts as to any other count.

[Mr. Henry] may be found guilty or not guilty of any one or all of the offenses charged.

(Emphasis added.) Thus, the court took affirmative steps to prevent the jury from conflating the charges and incidents or confusing the evidence relating to each case, and "[i]t is well-settled that juries are presumed to follow the trial court's instructions." *State v. Witcher*, 2012-Ohio-4141, ¶ 33 (9th Dist.). We have previously stated that a limiting instruction to the jury cautioning them to

consider the charges separately reflects a lack of plain error in the trial court's joinder of cases. *State v. Samuels*, 2012-Ohio-5401, ¶ 13-14 (9th Dist.).

{¶13} Moreover, the incidents giving rise to the two cases occurred on a different date, seven months apart, with different locations, witnesses, and investigating authorities. *See, e.g., State v. Carter*, 2022-Ohio-3806, ¶ 18 (9th Dist.) (rejecting prejudicial joinder claim where the circumstances surrounding the incidents, including the dates, locations, and victims were distinct.); *State v. Ecker*, 2018-Ohio-940, ¶ 18 (9th Dist.) (affirming denial of motion to sever drug trafficking and manslaughter offenses that were on different dates with different locations).

{¶14} Accordingly, based on the foregoing, Mr. Henry has not shown that the trial court committed plain error by joining his cases for trial. The evidence in each case was uncomplicated, the court gave an appropriate limiting instruction, and the dates, location, and witnesses were completely separate and distinct. Mr. Henry's first assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER TWO

**APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL, IN VIOLATION OF <u>STRICKLAND V. WASHINGTON</u>, THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION.**

{¶15} Here, Mr. Henry argues that he received ineffective assistance of counsel when his trial counsel failed to properly file a motion for separate trials for his unrelated offenses.

{¶16} To prevail on a claim of ineffective assistance of counsel, Mr. Henry must establish (1) his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that "fall[s] below an objective standard of reasonable

representation[.]" *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 2006-Ohio-6679, ¶ 62. In addition, to establish prejudice, Mr. Henry must show that there existed "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694; *State v. Sowell*, 2016-Ohio-8025, ¶ 138. Both prongs under *Strickland* must be established to support an ineffective assistance of counsel claim. *Strickland* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691.

{¶17} For the reasons set forth in our analysis under the first assignment of error, Mr. Henry failed to establish that his counsel's performance was deficient in the manner alleged because there was no showing that his cases should have been severed. As both prongs of the *Strickland* test must be met to establish ineffective assistance of counsel, Mr. Henry cannot support his claim here. Mr. Henry's second assignment of error is overruled.

### ASSIGNMENT OF ERROR NUMBER THREE

**THE TRIAL COURT ERRED WHEN IT ADMITTED STATEMENTS MADE BY THE LISTED VICTIM WHERE APPELLANT LACKED THE ABILITY TO CROSS-EXAMINE THOSE STATEMENTS, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION, AND RULES 802, 803(1), AND 803(2) OF THE OHIO RULES OF EVIDENCE.**

{¶18} Here, Mr. Henry challenges the admission into evidence of V.C.'s statements to Officer Cagaric when he arrived on the scene. Mr. Henry argues that those statements were inadmissible hearsay. As a threshold matter and as the State points out, while Mr. Henry's argument challenges the admission of V.C.'s statements to the police, the pages of the transcript cited in his merit brief as representing the objectionable portions of the testimony actually pertain

to the testimony of the neighbor, S.P., who also testified to what V.C. told her. Yet Mr. Henry does not challenge S.P.'s testimony in his argument. His sole argument challenges V.C.'s statements to the police. Therefore, we presume Mr. Henry's transcript page reference was a typographical error and thus will limit our analysis to the testimony of Officer Cagaric regarding V.C.'s statements to him:

> Q. [State's counsel] When you spoke with [V.C.], what was her demeanor?
>
> A. [Officer Cagaric] Shook up, a little scared, I would say. Best way that I could describe the incident was she was panicked at what just occurred.
>
> . . .
>
> Q. Now, when you were speaking with [V.C.], did -- when she was shaken up, you said in a panicked state, what was she telling you as far as what happened with this incident?
>
> [MR. HENRY'S COUNSEL]: Objection, Your Honor.
>
> THE COURT: Overruled.
>
> . . .
>
> A. [V.C.] told me that the defendant, Mr. Henry, came over to the house, at which point an argument ensued. [V.C.] was knocked down onto the stairs, and [Mr. Henry] struck her in the face several times. At that point, [V.C.] was drug outside.

{¶19} Although the court did not state the specific basis for overruling Mr. Henry's objection, Mr. Henry presumes that the court admitted the statements as either an excited utterance or present sense impression and alleges that neither of those exceptions apply. However, the only argument that Mr. Henry develops in his merit brief is that V.C.'s statements are not an excited utterance. He does not argue whether the statements constitute a present sense impression. Therefore, we will limit our analysis to whether the statements were properly admitted as an excited utterance.

{¶20} We review decisions regarding the admission of evidence for an abuse of discretion. *State v. Clark*, 2020-Ohio-1178, ¶ 10 (9th Dist.). "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St. 3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from substituting its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). Although *Blakemore* is often cited as the general standard for reviewing discretionary decisions, the Ohio Supreme Court has provided additional guidance about the nature of an abuse of discretion:

> Stated differently, an abuse of discretion involves more than a difference in opinion: the "'term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations.'" *State v. Jenkins*, 15 Ohio St.3d 164, 222 [] (1984), quoting *Spalding v. Spalding*, 355 Mich. 382, 384, 94 N.W.2d 810 (1959). For a court of appeals to reach an abuse-of-discretion determination, the trial court's judgment must be so profoundly and wholly violative of fact and reason that "'it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.'" *Id.*, quoting *Spalding* at 384-385, 94 N.W.2d 810.

*State v. Weaver*, 2022-Ohio-4371, ¶ 24.

{¶21} Evid.R. 803(2) defines an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The Supreme Court of Ohio has said regarding the excited utterance exception that:

> "[t]here is no *per se* amount of time after which a statement can no longer be considered to be an excited utterance. The central requirements are that the statement must be made while the declarant is *still under the stress of the event and the statement may not be a result of reflective thought.*
>
> Therefore the passage of time between the statement and the event is relevant but not dispositive of the question.

(Emphasis added.) *State v. Taylor*, 66 Ohio St.3d 295, 303 (1993). "Merely being 'upset' clearly does not meet the standard for admissibility under Evid.R. 803(2) because it does not show that

[the defendant's] statements were not the result of reflective thought." *Id.* Similarly, we have said regarding the admissibility of an out-of-court statement as an excited utterance that:

> "[A] statement must concern some occurrence startling enough to produce a nervous excitement in the declarant, which occurrence the declarant had an opportunity to observe, and must be made *before there had been time for such nervous excitement to lose a domination over his reflective faculties.*'

(Emphasis added.) *State v. Horton*, 2017-Ohio-9078, ¶ 20 (9th Dist.), quoting *State v. Flowers*, 2012-Ohio-3783, ¶ 19 (9th Dist.).

{¶22}   Mr. Henry argues that there was no time frame established for when the officer asked V.C. about the incidents, and therefore, the State could not show that V.C. did not have the opportunity to conduct reflective thought.  He also argues that the admission of her statements cannot be harmless error because the only statements about what occurred that supported his conviction for aggravated burglary and assault came from V.C.'s statements to law enforcement. Mr. Henry further argues that V.C. never came to court to testify and never provided an in-court identification that Mr. Henry was the one who attacked her, and therefore, the jury had no ability to truly weigh her credibility or the reliability of her statements.  We disagree with Mr. Henry.

{¶23}   First, as the State points out, Mr. Henry does not challenge any other portions of the record that include V.C.'s out-of-court statements about Mr. Henry's conduct, such as S.P.'s testimony, the 911 call, and the Ring camera footage.  Therefore, even if V.C.'s statement to the police had been excluded, the jury still heard the same information about Mr. Henry's actions through other testimony and evidence.  Thus, Mr. Henry was not prejudiced by any improper admission of Officer Cagaric's testimony as it was merely cumulative of other evidence.

{¶24}   Notwithstanding that the admission of Officer Cagaric's testimony was harmless in the first instance, we further conclude that the court did not abuse its discretion in admitting V.C.'s statements as excited utterances.  Both S.P. and Officer Cagaric testified that V.C. was crying,

shaken up when speaking with them, panicked, and upset because of the incident. The Ring camera footage shows S.P. going across the street to T.S.'s house within seconds after Mr. Henry left T.S.'s residence, "before there had been time for [V.C.'s] nervous excitement to lose a domination over [her] reflective faculties." *Horton* at ¶ 20, quoting *Flowers* at ¶ 19.

{¶25} Based on the foregoing testimony and evidence, we conclude that the State presented sufficient evidence that V.C. had not had the opportunity to exercise reflective thought about the incident at the time of her statements to Officer Cagaric, and that she was still "under the stress of the event" and in a state of "nervous excitement." *Taylor*, 66 Ohio St.3d at 303; *Horton* at ¶ 20 (9th Dist.). The State's evidence showed that V.C. was still experiencing shock and panic at the time of her statements, which is beyond "[m]erely being 'upset.'" *Taylor* at 303; *accord State v. Campbell*, 2021-Ohio-2050, ¶ 14 (9th Dist.) (trial court did not abuse its discretion by admitting victim's statements where there was evidence that the victim was still under the stress of the event, and crying and scared when she spoke with the officer); *State v. Henning*, 2019-Ohio-2200, ¶ 21 (9th Dist.) (trial court did not abuse its discretion by admitting victim's statements when the victim was "very upset" and cried at the time of the statements even though an hour had elapsed since defendant left the scene).

{¶26} Accordingly, we cannot say that the trial court abused its discretion in admitting V.C.'s statements as they qualify as excited utterances under Evid.R. 803(2). Therefore, Mr. Henry's third assignment of error is overruled.

## ASSIGNMENT OF ERROR FOUR

**APPELLANT'S CONVICTIONS FOR AGGRAVATED BURGLARY, IN VIOLATION OF SECTION 2911.11(A)(1)(B) OF THE OHIO REVISED CODE, AGGRAVATED TRAFFICKING IN DRUGS, IN VIOLATION OF SECTION 2925.03(A)(2)(C)(1), AGGRAVATED POSSESSION OF DRUGS, IN VIOLATION OF SECTION 2925.11(A)(C)(1)(C), AND HAVING WEAPONS WHILE UNDER DISABILITY, IN VIOLATION OF SECTION**

**2923.13(A)(3)(B), ARE UNCONSTITUTIONAL AS IT IS BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTIONS TEN AND SIXTEEN OF THE OHIO CONSTITUTION.**

{¶27} Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "A challenge to the sufficiency of the evidence concerns the State's burden of production and is, in essence, a test of adequacy." *State v. Wilk*, 2023-Ohio-112, ¶ 9 (9th Dist.), citing *In re R.H.*, 2017-Ohio-7852, ¶ 25 (9th Dist.); *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶28} R.C. 2911.11(A)(1) prohibits aggravated burglary and provides that:

(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

(1) The offender inflicts, or attempts or threatens to inflict physical harm on another[.]

{¶29} Mr. Henry argues that the evidence is insufficient to sustain his conviction for aggravated burglary because it was based primarily on V.C.'s inadmissible statements that Mr. Henry punched her multiple times, and that even if those statements were admissible, and assuming that he inflicted physical harm on V.C., the evidence shows that he came to the residence with the purpose of seeing his children, which is not a criminal offense. He maintains that the harm inflicted upon V.C. was incidental to his primary intention of seeing his children and not the result of other animus towards V.C.

{¶30}   Mr. Henry is essentially arguing that when V.C.'s inadmissible hearsay statements are removed from the record, the evidence is insufficient to sustain his conviction.  We addressed the admissibility of V.C.'s statements under the third assignment of error and determined that they were properly admitted.  However, even if V.C.'s statements were inadmissible, they must still be considered for sufficiency purposes. *In re T.A.F.,* 2010-Ohio-3000, ¶ 24 (9th Dist.), citing *State v. Brewer*, 2009-Ohio-593, ¶ 19 ("on appellate review we must consider all of the evidence admitted at trial, including improperly admitted evidence, when determining whether the state met its burden of proof.").

{¶31}   The State argues that while Mr. Henry may not have initially intended to commit a criminal offense when he arrived at T.S.'s residence, he developed that intent when he forced his way into the house, after V.C. expressed that he was not permitted to be there and then proceeded to assault her.  We agree.

{¶32}   In *State v. Gardner*, 2008-Ohio-2787, ¶ 33, the Ohio Supreme Court instructed regarding aggravated burglary that "[o]ur cases make clear that the state was required to show that [a defendant] invaded the dwelling for the purpose of committing a crime *or that he formed that intent during the trespass.*" (Emphasis added.), citing *State v. Fontes*, 87 Ohio St.3d 527, syllabus ("[f]or purposes of defining the offense of aggravated burglary under R.C. 2911.11, a defendant may form the purpose to commit a criminal offense at any point during the course of a trespass."). The Tenth District applied this principle in a similar case where the defendant raised the same challenge. *See State v. Harris*, 2023-Ohio-3994, ¶ 36 (10th Dist.) (State's evidence, if believed, established that after the defendant broke into the victim's house by kicking in the front door, he formed the intent to commit the criminal offense of assault during the trespass).

{¶33} Upon reviewing the record, we conclude that the State's evidence, if believed, sufficiently established that Mr. Henry developed the intent to commit the criminal offense of assault as he was forcing his way into the house after V.C. told him he was not allowed in, and then, in fact, proceeded to inflict physical harm upon her. Mr. Henry does not dispute the trespass element of the offense. "Assault" is defined as "knowingly caus[ing] or attempt[ing] to cause physical harm to another[.]" R.C. 2903.13(A). "Physical harm" is defined by R.C. 2901.01(A)(3) as "any *injury*, illness, or other physiological impairment, regardless of its gravity or duration." (Emphasis added.) The State presented evidence that V.C. sustained injury after Mr. Henry forcibly entered the residence. She told the 911 operator that Mr. Henry punched her multiple times. V.C. told the responding police officer and S.P. that Mr. Henry knocked her down the stairs, struck her in the face, and dragged her outside. The neighbor testified that Mr. Henry assaulted her inside the home. The photographs taken by the police corroborate the fact that V.C. sustained injuries to her face.

{¶34} Accordingly, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of aggravated burglary under R.C. 2911.11(A)(1) were proven beyond a reasonable doubt; to wit, that Mr. Henry trespassed in T.S.'s residence with the purpose of committing the offense of assault and inflicted physical harm upon V.C.

{¶35} With regard to the first case, Mr. Henry argues that the evidence was insufficient to support his convictions for aggravated possession of drugs and having weapons while under disability because he had not been seen with the firearms and drugs prior to the stop; there was no indication that he owned those items; and there was no DNA evidence linking him to the

contraband. Regarding his conviction for aggravated trafficking, he argues that there was no evidence the drugs were being prepared for distribution. We disagree.

{¶36} R.C. 2925.03(A)(2) prohibits aggravated trafficking in drugs and states that "[no] person shall knowingly . . . [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance . . . ." Sergeant Okoh testified that 10 individually wrapped bags of methamphetamine were found during the search of the vehicle as well as a scale. Each bag weighed 32-25 grams, over ten times the bulk amount of three grams. In his experience, that quantity of drugs and the individual packaging "show[ed] intent to distribute" and the scale was "an indicator that you weigh the drugs to make sure that you're giving the customer the proper amount so they don't get ripped off." Thus, Mr. Henry's argument that there was no evidence that the drugs were being prepared for distribution is not supported by the record as Sergeant Okoh testified directly on that subject.

{¶37} Accordingly, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of aggravated trafficking in drugs under R.C. 2925.03(A)(2) were proven beyond a reasonable doubt. The drugs were found in close proximity to a digital scale, were packed in multiple baggies, and were in a large quantity associated with distribution. *See State v. Carpenter*, 2019-Ohio-58, ¶ 34-35 (3d Dist.) (testimony from two police officers indicated trafficking where drugs were found in close proximity to a digital scale, bindles of drugs were packaged for sale, and there was torn lottery/notebook paper); *State v. Connor*, 2005-Ohio-1971, ¶ 57 (8th Dist.) (discovery of a large quantity of drugs led to a reasonable inference of drug trafficking).

{¶38} R.C. 2925.11(A) prohibits aggravated possession of drugs and states that "[n]o person shall knowingly obtain, possess, or use a controlled substance[.]" R.C. 2923.13(A)(3)

prohibits having weapons under disability and provides that "no person shall knowingly acquire, have, carry, or use any firearm" if that person has a previous felony drug conviction. "A person must actually or constructively possess a firearm in order to 'have' it for purposes of [having weapons under disability]." *State v. Tucker*, 2016-Ohio-1353, ¶ 21 (9th Dist.).

{¶39} "[A] person may knowingly possess a substance or object through either actual or constructive possession." *State v. Hilton*, 2004-Ohio-1418, ¶ 16 (9th Dist.). "'Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession.'" *State v. Kendall,* 2012-Ohio-1172, ¶ 14 (9th Dist.), quoting *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus. We have also recognized that "'the crucial issue is not whether the accused had actual physical contact with the article concerned, but whether the accused was capable of exercising dominion [and] control over it.'" *State v. Graves*, 2011-Ohio-5997, ¶ 15 (9th Dist.), quoting *State v. Ruby*, 2002-Ohio-5381, ¶ 30 (2d Dist.). "Ownership need not be proven to establish constructive possession." *State v. Sarvabui*, 2020-Ohio-1429, ¶ 10 (9th Dist.). "This Court has specifically noted that access to a weapon can establish possession." *Tucker* at ¶ 22. We have also previously noted that the jury is entitled to find that the defendant constructively possessed a controlled substance based on "the drugs' presence in a usable form and in close proximity to the defendant." *State v. Figueroa*, 2005-Ohio-1132, ¶ 8 (9th Dist.).

{¶40} The State's evidence showed through Sergeant Okoh's testimony and the photographs taken by the police that the drugs and firearms were found by Mr. Henry's feet and "in that immediate-reach area." Officer Zach Snader, who also responded to the scene, testified that anyone sitting where Mr. Henry was seated in the vehicle would "[c]ertainly" have been able to see the firearms upon looking down. Therefore, the State presented evidence that based on the

close proximity of the drugs and guns to where Mr. Henry was seated, he could access and exercise dominion and control over them, and thus, was in constructive possession regardless of ownership or whether he had actual physical possession. *See State v. Gordon*, 2025-Ohio-1667, ¶ 24-25 (5th Dist.) (holding that the State presented sufficient evidence of constructive possession of drugs that were found under the defendant's feet and thus easily accessible).

{¶41} Accordingly, we conclude that when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes of aggravated possession of drugs and having weapons under disability were proven beyond a reasonable doubt.

{¶42} Based on the foregoing, Mr. Henry's fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR NUMBER FIVE

**APPELLANT'S CONVICTIONS FOR AGGRAVATED BURGLARY, IN VIOLATION OF SECTION 2911.11(A)(1)(B) OF THE OHIO REVISED CODE, AGGRAVATED TRAFFICKING IN DRUGS, IN VIOLATION OF SECTION 2925.03(A)(2)(C)(1), AGGRAVATED POSSESSION OF DRUGS, IN VIOLATION OF SECTION 2925.11(A)(C)(1)(C), AND HAVING WEAPONS WHILE UNDER DISABILITY, IN VIOLATION OF SECTION 2923.13(A)(3)(B), ARE UNCONSTITUTIONAL AS IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTIONS TEN AND SIXTEEN OF THE OHIO CONSTITUTION.**

{¶43} Regarding the first case, Mr. Henry argues that his convictions were against the manifest weight of the evidence because there was inadequate evidence that the fanny pack containing the drugs and firearms belonged to him, and no testimony to support that the drugs were prepared for shipment or actively being trafficked. Mr. Henry claims that despite there being three other individuals in the vehicle, only one of those individuals, Mr. Samuel Joseph-Wilson, was

called to testify about ownership of the guns, and he was called by Mr. Henry, not the State. Mr. Joseph-Wilson testified that Mr. Henry was not the owner of the guns.

{¶44} Mr. Henry argues that his conviction in the second case for aggravated burglary was against the manifest weight of the evidence because V.C. did not testify at trial, and therefore, the jury did not have the opportunity to view her demeanor. He also argues that there was no evidence that Mr. Henry intended to commit the trespass in furtherance of another crime.

{¶45} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 2019-Ohio-3970, ¶ 26 (9th Dist.). This Court "will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Barger*, 2016-Ohio-443, ¶ 29 (9th Dist.).

{¶46} We have already addressed Mr. Henry's argument regarding constructive possession or actual possession in the first case under his fourth assignment of error. As a matter of law, ownership of the drugs and guns was not a necessary element that the State was required to prove to show possession in the first instance, rather the State must prove actual or constructive possession. *Sarvabui*, 2020-Ohio-1429, at ¶ 10 (9th Dist.). Sergeant Okoh testified based on his experience that the quantity and packaging of the drugs as well as the nearby scale showed intent to distribute. Thus, Mr. Henry's argument that there was no testimony that the drugs were being

19

packaged for distribution is not supported by the record. The jury was able to observe the demeanor of both Sergeant Okoh and Mr. Joseph-Wilson, weigh their credibility, and resolve any differences in their testimonies. Mr. Henry has not shown us on appeal that this is an exceptional case in which the evidence weighs heavily against conviction.

{¶47} Similarly, we have already addressed Mr. Henry's argument regarding intent in the second case under his fourth assignment of error. A finding that he had the intent to commit assault of V.C. when he entered the home, or formed that intent contemporaneously, is also not against the weight of the evidence. As for his argument regarding V.C.'s statements, even though she did not testify at trial, her statements were admitted during the testimony of Officer Cagaric and S.P. and were heard on the 911 call and Ring camera footage.

{¶48} Based on our review of the record and the applicable law, we cannot conclude that this is an exceptional case where the trier of fact clearly lost its way in finding that Mr. Henry was guilty of aggravated burglary, aggravated possession of drugs, aggravated trafficking in drugs, and having weapons under disability.

{¶49} Accordingly, based on the foregoing, Mr. Henry's fifth assignment of error is overruled.

III.

{¶50} Based on the foregoing, Mr. Henry's assignments of error are overruled, and the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

FLAGG LANZINGER, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

ADAM M. VANHO, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.